## STATE v. ARTHUR E. OLSON.[1]

November 22, 1935.

No. 30,579.

*Olof L. Bruce, Howard M. Englund,* and *F. M. Miner,* for appellant.

*Harry H. Peterson,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *Joseph M. Donahue,* Special Assistant Attorney General, *Ed J. Goff,* County Attorney, and *William G. Compton,* Assistant County Attorney, for the State.

[1]Reported in 263 N. W. 437.

LORING, JUSTICE.

Defendant appeals from an order. denying his motion for a new trial after a verdict of guilty had been rendered against him in a forgery prosecution.

Defendant was an attorney at law and notary public in the city of Minneapolis and was indicted for forgery in the first degree on a charge of falsely certifying that one Hiller, whose name was forged thereto, had executed and acknowledged a real estate mortgage extension agreement.

The history of the case is lengthy, but since defendant, on this appeal, does not assert that the verdict is not justified by the evidence, it may be condensed. Defendant was the attorney for Mary Hauser and her husband, Edwin. Mary Hauser was the guardian of an incompetent brother and through the defendant negotiated with one Hiller for the sale of a farm belonging to the incompetent. A deal was made whereby Hiller bought the farm, paying $2,000 cash and giving Mrs. Hauser a $5,000 mortgage for the balance. When the mortgage became due in 1928 defendant sent for the Hausers, and when they came to his office he had them execute a satisfaction of the mortgage, advising them that Hiller would be in the office that day to pay the mortgage. Hiller did not arrive promptly, and the Hausers left defendant's office, leaving with him the satisfaction. Hiller came later, paid the mortgage in full, and was given the satisfaction, which he recorded. Defendant informed the Hausers that Hiller had paid him only $2,000 and turned that amount over to them, stating that he would keep after Hiller for the balance. He appropriated the $3,000 to his own use. In 1931 the Hausers, thinking that the mortgage was still an existing lien, suggested to defendant that he renew the mortgage with Hiller, and defendant then drew up the extension agreement which bears the false certification to Hiller's signature and acknowledgment. Hiller's signature to the agreement had been forged; by whom does not appear, although there is a fair inference that it may have been forged by or at the instance of the defendant. The Hausers did not discover the defendant's peculation until about two years later,

when they attempted to record the extension agreement and were then informed that the mortgage had been satisfied.

Defendant assigns as error on this appeal: (1) Misconduct on the part of the prosecuting attorney; (2) prejudicial error arising out of the trial court's refusal to consider an affidavit of prejudice; and (3) an erroneous denial of a new trial because of the alleged incompetency of a member of the jury that tried defendant.

1. The charge of misconduct against the prosecuting officer is the most serious question presented by this record. Zeal and vigor in presenting the state's case are always to be commended, but it is difficult to understand why experienced counsel will jeopardize a conviction by going as far as did the prosecuting officer in this case. Perhaps the outrageous breach of professional duty by the defendant explains the natural feeling of indignation which led counsel to go to the extent he did in the cross-examination of the defendant. However, the effect of such misconduct is primarily for the trial court which passed upon the record in the case and determined that the acts complained of were without prejudice to the defendant. It must be borne in mind that the admissibility of evidence is not here involved. Only the conduct of counsel is impugned. On this point the learned trial court, whose impartiality is conceded, had this to say:

"A reading of the record will show that this case on both sides was tried with zeal and spirit. It was not a case of a lion on one side and a lamb on the other. Both counsel were somewhat militant and, on the whole, it seemed to the court they broke about even."

With some reluctance we concur in the trial court's view on this subject. The evidence of guilt was overwhelming, and in such cases new trials should be granted only for compelling reasons.

2. Careful examination of the record convinces us that the affidavit of prejudice against the trial judge was not seasonably presented to the court, and it is difficult to avoid the conclusion that it was filed as just one more step in the long series of dilatory acts calculated to delay the trial of this case, acts which were altogether

too successful in postponing the trial of a man against whom the evidence seems clear and convincing.

3. It is claimed that one of the jurors named Peterson was a citizen of North Dakota and not of Hennepin county. It is alleged that upon his *voir dire* the juror, in response to questions by defendant's counsel, stated that he was a resident of Minneapolis. This is denied by the prosecuting officer. The juror himself says that he has no recollection of any such questions being asked him. The court in its memorandum denying the motion for a new trial stated that the juror answered the questions that were asked him, as far as he knew and believed, truthfully. It appears that the juror was born in North Dakota, but since the year 1922 until the death of his parents he has lived with them in Minneapolis and has claimed a residence at 400 Oak street southeast since their death. He has a farm in North Dakota and has spent much of his time in that state during the cropping season and in fact voted there in 1932 and 1934. However, there is sufficient evidence in the affidavits presented to the court from which it might justly find that although the juror may have committed an offense against the election laws of North Dakota he was nevertheless a resident citizen of Hennepin county. In any view of the matter, we are convinced that it is a proper case for the application of the doctrine laid down in State v. Durnam, 73 Minn. 150, 160, 75 N. W. 1127, 1129, where Mr. Justice Mitchell said:

"First, no objection can be taken to any incompetency in a juror (existing at the time he was called) after he is accepted and sworn, if the fact was known to the party, and he was silent; second, and, even if not discovered until after verdict, the cause of challenge will not per se constitute ground for a new trial. In such case only the discretion of the court can be appealed to, which will consider the nature of the objection to the juror, what diligence the party exercised to ascertain the fact in due time, and the other circumstances of the case. * * * We think it is a matter addressed to the sound judicial discretion of the trial judge, who should take all the circumstances above referred to into consideration."

The learned justice further added [73 Minn. 161]:

"The disqualification by reason of alienage is one which does not go to either the intelligence or the impartiality of a proposed juror."

We see no abuse of discretion in the case at bar.

The order appealed from is affirmed.