STATE EX REL. FRANK THOMPSON AND OTHERS v. VINCE A. DAY.
STATE EX REL. F. W. WOOLWORTH COMPANY v. SAME.
STATE EX REL. AMERICAN GAS MACHINE COMPANY, INC. v. SAME.
STATE EX REL. WILLIAM WITTMERS v. SAME.[1]

May 26, 1937.

Nos. 31,379, 31,380, 31,381, 31,382.

[1]Reported in 273 N. W. 684.

*Bennett O. Knudson,* for relators.
*Josiah A. Baker,* for respondent.

HOLT, JUSTICE.

This is an action to make permanent and absolute a writ of prohibition preventing the Honorable Vince A. Day, a judge of the fourth judicial district, from acting upon an executive order of the governor which assigned him to hear and determine an action pending before the regularly elected, qualified, and acting judge of the tenth judicial district.

Relators commenced an action in the district court of Freeborn county, tenth judicial district, of which district the Honorable Norman E. Peterson is the only judge, to restrain five striking employes and nine nonemployes, who, in a sit-down strike, were alleged to have seized premises and equipment owned by relators and used by them in a general trucking business. After hearing the testimony *ex parte,* the trial court made findings of fact and entered an

order requiring the defendants to show cause why temporary injunctions should not issue as prayed for in the complaint. The order to show cause was accompanied by a temporary restraining order.

One Dave Petersen, a defendant in the injunction suit, sent to the governor of the state of Minnesota an affidavit alleging that Judge Peterson was prejudiced against him and in consequence was disqualified from acting in the suit and requested the governor to appoint another judge to try the action. The affidavit did not allege that Judge Peterson was disqualified in any other way than by prejudice. March 30, 1937, the governor promulgated an order appointing the Honorable Vince A. Day, judge of the fourth judicial district, to hear and determine the case at Albert Lea at a time therein designated, and removing Judge Peterson from acting on the ground that he was disqualified.

Relators applied to this court for a writ of prohibition, and March 31, 1937, an alternative writ directing Judge Day to refrain from proceeding further and to show cause why he should not be restrained from so proceeding was issued. The application for the writ was based upon an affidavit of relator Thompson stating that Judge Peterson is in good health, is fully up with his work, and has no accumulation of business undisposed of; is not pecuniarily interested in the litigation nor related to any of the parties to it. Dave Petersen's affidavit did not controvert any of the above facts.

2 Mason Minn. St. 1927, § 9221, provides for the filing of an affidavit of prejudice in a district where there are two or more judges. The section did not apply in the tenth district when this proceeding arose because there is but one judge (but see L. 1937, c. 237).

In State ex rel. Decker v. Montague, 195 Minn. 278, 262 N. W. 684, this court went fully into the history of the statutes purporting to vest in the governor power to substitute a trial judge when convenience or the public interest requires it, and it was there held under the circumstances existing in the Montague case that it was not constitutionally permissible for the governor to designate a judge to try the Decker case.

As noted in the Montague case, art. 6, § 5, of our state constitution provides:

"The legislature may provide by law that the judge of one district may discharge the duties of the judge of any other district not his own, when convenience or the public interest may require it."

In 1 Mason Minn. St. 1927, § 158, which was under consideration in the Montague case, the legislature added to the convenience or the interest of the public "the interest of any litigant." From our discussion in the Montague case it is quite obvious that this court regarded that quoted constitutional provision as applying to a situation where a district judge was disabled or where the accumulation of business was such that he was unable to take care of it. The history of the legislation from territorial days down to 1891 indicates that the legislature shared our present views on that subject.

2 Mason Minn. St. 1927, § 9218, prohibits a district judge from sitting in any cause except to hear a motion to change the venue, if he be interested in its determination or if he might be excluded for bias from acting therein as a juror. It also provides that if he be the only judge of the district he shall grant a change of venue whenever upon a motion his interest or bias shall be made to appear "unless before the motion is heard the governor shall have assigned another judge to try such cause." Actual bias is defined in 2 Mason Minn. St. 1927, § 10737, as a state of mind which prevents a juror from trying an issue impartially and without prejudice to the substantial rights of the challenging party; but since Sjoberg v. Nordin, 26 Minn. 501, 5 N. W. 677, this statute has been interpreted as not disqualifying a judge for other than a pecuniary interest in the event of the action. The language of the statute was somewhat modified by the 1905 revision but the meaning was not changed. State v. Ledbeter, 111 Minn. 110, 126 N. W. 477. The Sjoberg case has stood too long and has been followed too many times for this court now to depart from its construction of the statute. It follows that the Dave Petersen affidavit stated no cause for disqualifying Judge Peterson.

Art. 3, § 1, of our state constitution provides:

"The powers of the government shall be divided into three distinct departments, the legislative, executive, and judicial; *and no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others,* except in instances expressly provided in this Constitution." (Italics supplied.)

We do not regard the provisions of art. 6, § 5, as sufficient authorization to the legislature to empower the executive to step out of his constitutional sphere and to exercise authority properly belonging to the judicial branch of the government. We think that full power under art. 6, § 5, could be exercised by the legislature without calling in the executive. If so the section should be so construed, because to construe it otherwise would be in derogation of the provisions of art. 3, § 1, which are fundamental to the preservation of a free democracy. Other means have been provided for disposal of matters arising before judges disqualified by interest or by alleged bias, L. 1937, c. 237.

As stated in the Montague case, the power sought by § 158 to be vested in the governor is fundamentally a judicial power and hence, unless granted to him by some other provision of the constitution, it is in contravention of art. 3, § 1. Even if art. 6, § 5, were construed to authorize the legislature to act by so empowering the governor, it does not extend to the disqualification here sought to be invoked as a basis for the exercise of the power. Even if § 158 were construed to reach bias and prejudice insofar as it seeks to vest in the governor authority to substitute judges on account of bias or prejudice, it goes beyond the authority of art. 6, § 5, and the same may be said of the implication that the governor has such authority, contained in § 9218. U'Ren v. Bagley, 118 Or. 77, 245 P. 1074, 46 A. L. R. 1173, is not in point because the power of the legislature to invest the executive with judicial functions was not involved. The question there presented was whether a statute like our § 9221 was constitutional. No one in this state has ever questioned such constitutionality. The point before us is whether under our constitution the legislature may provide that the governor may exercise a power properly belonging to the judicial branch.

We hold that art. 6, § 5, does not authorize such legislation.

Nobody denies that the legislature may regulate the practice and proceedings of the courts. Minn. Const. art. 6, § 14. Nobody questions its right by law to say when, for what cause, and in what manner a trial judge may be disqualified to proceed further in a case. But the matter of selecting the substitute judge pertains to the everyday, routine management of the courts and therefore is a judicial function. Hence it cannot be delegated to the executive department. To illustrate: In our several districts with two or more judges, one of them frequently steps aside because he feels that the litigants or their counsel, or some of them, would prefer to have a case tried by another. That, too, is quite the ordinary thing even without the filing of an affidavit of prejudice. In Hennepin county there are eleven judges; in Ramsey, eight. Nobody has ever considered it a constitutional function of the governor to step into either of those counties for the purpose, from day to day, of assigning and reassigning the judges. Nobody would consider, for instance, that constitutionally it could be made a function of the governor to come in at the beginning of the term and say what judges should hear the criminal calendar, which the jury cases, which others the court cases, and name the one, if any, to care for matters to be presented in chambers. Yet just such a law would be constitutional if, as here, when any judge anywhere in the state is disqualified for prejudice, there may be delegated to the governor the duty of selecting his substitute.

We hold that the executive order of March 30 was without authority and void, and the alternative writ should be made permanent and absolute.

So ordered.

Cases Nos. 31,380, 31,381, 31,382 are similar suits arising out of the same actions and supported by similar affidavits on both sides and are therefore controlled by the foregoing.

GALLAGHER, CHIEF JUSTICE (dissenting).

For the reasons hereinafter stated, I am unable to subscribe to the views expressed in the majority opinion. I regret that the case

did not come to this court for consideration in calmer times and from a district less surcharged with industrial strife. The importance of the question involved, however, overshadows the importance of the parties. That question, plainly presented, is this: May the governor of the state in the interest of the public designate the judge of one district to act for the judge of another district when in his judgment a sufficient showing has been made to convince him that the judge complained against is disqualified to act by reason of bias or prejudice?

In determining that question it is necessary to consider certain constitutional and statutory provisions. Art. 6, § 5, of the state constitution provides:

"The district courts shall have original jurisdiction in all civil cases, both in law and equity, where the amount in controversy exceeds one hundred dollars, and in all criminal cases where the punishment shall exceed three months' imprisonment or a fine of more than one hundred dollars, and shall have such appellate jurisdiction as may be prescribed by law. *The legislature may provide by law that the judge of one district may discharge the duties of the judge of any other district not his own, when convenience or the public interest may require it.*"

That part of § 158, 1 Mason Minn. St. 1927, applicable provides:

"*Whenever in the judgment of the governor,* or of any judge of any judicial district, *the convenience or interest of the public* or the interest of any litigant shall require that the judge of another judicial district shall discharge any of the duties of such judge, the governor may designate, or such judge may request, a judge of the district court of any other judicial district to discharge any such duties; to hold, or to assist in holding a general or special term of such court, in any county of such judicial district other than his own, or to try and determine any motion, action or proceeding pending therein."

Clearly, that portion of § 158, 1 Mason Minn. St. 1927, which follows almost exactly the wording of the constitutional provision above referred to is valid legislation, and the courts are required to

84

enforce the plain wording of the law passed by the legislature to carry out the mandate of the constitution. A history of the litigation in which the question before the court arises is not material to a determination of the question. Regardless of its nature, and before the actions involved were brought to trial, one of the parties litigant filed with the governor an affidavit reading as follows:

"STATE OF MINNESOTA

"COUNTY OF RAMSEY

"Dave Petersen, being first duly sworn, upon oath says:

"1. That he is one of the defendants named in the above entitled action.

"2. Affiant further states that at all times mentioned herein he was and still is a member of the Independent Union of All Workers, Local No. 2, Albert Lea, Minnesota. That nearly all of said defendants in this action are members of said union and that this action arises from a strike called by said union at the plants of plaintiff company at Albert Lea, Minnesota, which strike is still pending and undetermined and which plants are now being picketed by members of said union.

"3. Affiant further states that under Minnesota statutes the Honorable NORMAN E. PETERSON is the only judge in and for the Tenth Judicial District of the State of Minnesota.

"4. That said judge has had before him for consideration and decision numerous matters involving the affairs of said union and its members. That said judge has invariably displayed prejudice and vindictive animus in such cases towards this affiant, said defendants and the interests of said union and its members. That instances of such conduct are as follows: to-wit:

"(a) That affiant was indicted for riot arising from a Labor dispute at the Potter Foundry at Albert Lea, Minnesota, in February, 1935. That such prosecution was that certain action in the said District Court of Freeborn County, Minnesota, entitled State of Minnesota vs. Ray Hemenway et al., File No. 8185. That affiant was arrested in said action and confined in the county jail of said county. That affiant had never been arrested before or charged

with any public offense prior to said indictment. That affiant was at that time, and still is, married, the father of two children and the owner of his home and residing therein with his family. That in spite of the previous good conduct and reputation of affiant said Judge Norman E. Peterson fixed bail for him at an exorbitant and unreasonable amount, to-wit:—the sum of $1,000.00. That affiant is informed by his counsel and officers of said union that an oral offer of cash bail in his case was made to said judge. That thereupon said Judge Norman E. Peterson responded to such application with the statement that the Minnesota statutes did not permit acceptance of cash bail. That on account of the unreasonable and arbitrary attitude of said judge in said respect he was removed from further duties as judge in said matter by Governor Floyd B. Olson.

"(b) That in September, 1936, an action for injunction was commenced by one Stella Reid, as plaintiff, against Local No. 1, of said union and various members thereof in the District Court of Mower county, Minnesota, before said Honorable Norman E. Peterson. That said action bears number 15,112 in said court. That the parties to said action were all engaged in the same business as defined in and by Chapter 416 of the Laws of 1933. That the issues involved in said action arose out of the attempts of defendants to induce said Stella Reid to sign an agreement with said union involving wages, hours of work and conditions of work in her shop and picketing following the failure of such negotiations. That said action is defined as a labor dispute in and by said statute. That said judge denied said union and its members the benefits and protection provided by said statute and issued a temporary injunction against defendants in said action without making or filing any findings of fact whatever as required by said statute.

"(c) That said Joseph Voorhees, defendant herein was also a defendant in said action brought by said Stella Reid. That after the issuance of said temporary injunction said judge signed a warrant for the arrest of said Joseph Voorhees and Sanford McCourt, a member of Local No. 1 of the said Independent Union of All Workers, for alleged contempt of said injunction. That said Joseph Voorhees and Sanford McCourt were arrested under such warrant

and arraigned before said Judge NORMAN E. PETERSON at Albert Lea, Minnesota, on October 8th, 1936. That said JOSEPH VOORHEES and said SANFORD MCCOURT then and there pleaded 'Not Guilty' to said charge and by their counsel asked to be allowed bail. That said judge thereupon summarily and unlawfully denied such application for bail and said JOSEPH VOORHEES and said SANFORD MCCOURT were then ordered by said Judge to be confined in the county jail of said Mower County. That both of said respondents were subjected to said illegal detention in said jail from October 8th, 1936, to October 13th, 1936, both dates inclusive, and that on said latter date they were both admitted to bail by the Honorable A. B. GISLASON, District Judge. That on October 15, 1936, said SANFORD MCCOURT was acquitted of said charge. That the case of said JOSEPH VOORHEES is now pending and undetermined before the Supreme Court of the State of Minnesota.

"(d) That after the commencement of said injunction action in the District Court of Mower County as aforesaid, said STELLA REID, and two other plaintiffs began a similar action for injunction against the same parties defendant as in the said first action with the addition as defendant of said SANFORD MCCOURT. That the legal points involved in such second are identical with those in the first action. That in said second action said Judge NORMAN E. PETERSON again denied defendants the benefits and protection of said Chapter 416 of the Laws of 1933 and ordered issuance of another temporary injunction without making or filing any findings of fact whatever as required in and by said Statute.

"5. That on account of the foregoing a state of mind exists on the part of said Judge NORMAN E. PETERSON in reference to this case and to this affiant in particular that said judge cannot try the issues herein impartially and without prejudice to the substantial rights of affiant and the other defendants herein, and that said Honorable NORMAN E. PETERSON, District Judge as aforesaid, is disqualified from trying this case or any part thereof.

"DAVE PETERSEN

"Subscribed and sworn to before me

this 30th day of March, A. D. 1937.

GEO. L. HRAGE

Notary Public, Ramsey County, Minnesota

My commission expires August 2, 1943.

"(SEAL)"

Upon this petition the governor made the order challenged in this proceeding. It is worded as follows:

"It appearing from the attached affidavit of Dave Petersen, one of the defendants in the above entitled action, that the Hon. Norman E. Peterson, Judge of the District Court, in and for the Tenth Judicial District of the State of Minnesota, is disqualified from presiding as Judge in the above entitled action; and

"It further appearing that the interest of said defendants above named require that a Judge of another Judicial District discharge the duties of the said Judge of the Tenth Judicial District in said action;

"It is hereby ordered that the Hon. Vince A. Day, Judge of the District Court, in and for the Fourth Judicial District of the State of Minnesota, be and he hereby is designated to discharge the duties of the Hon. Norman E. Peterson, Judge of the District Court in the Tenth Judicial District, in the above entitled action, and preside at the hearing upon the Temporary Restraining Order and Order to Show Cause set for Monday, April 5, 1937, at ten o'clock in the forenoon, or as soon thereafter as counsel can be heard, at the Court House in the city of Albert Lea, Minnesota.

"Dated this 30th day of March, 1937.

"ELMER A. BENSON

"Governor of Minnesota."

The order of removal embodies two grounds therefor: (1) A finding of disqualification based upon the facts appearing in the affidavit; and (2) a finding that the interests of the defendants require the designation of another judge.

At the time this matter was presented to the governor and this court, it was possible for any litigant under the provisions of 2 Mason Minn. St. 1927, § 9221, in 51 counties of the state (being

the counties included in judicial districts having two or more judges) to disqualify a judge before whom an action was pending and to require the calling in of another judge of the same or another district by serving and filing an affidavit stating that "on account of prejudice or bias on the part of such judge, he has good reason to believe, and does believe, that he cannot have a fair trial or hearing thereof." With reference to this statute the court said in State v. Hoist, 111 Minn. 325, 327, 126 N. W. 1090, 1091:

"It means that the legislature intended that the filing of an affidavit of prejudice with the judge not less than two days before the expiration of the time allowed to prepare for trial operated of itself, without any other act on the part of either counsel or court, to incapacitate the judge from trying the same."

Since the commencement of this case the 1937 legislature by L. 1937, c. 237, being an amendment of 2 Mason Minn. St. 1927, § 9221, has made it possible to disqualify the judge of any district by filing an affidavit of prejudice.

Clearly, under the constitution the legislature is authorized only to provide for calling in an outside judge to take the place of a resident judge when "convenience or the public interest may require it." By L. 1937, c. 237, it has now provided that the litigant may, by filing an affidavit stating his belief of the existence of prejudice, *ipso facto* disqualify the resident judge and require the calling in of an outside judge.

This law making the provisions of 2 Mason Minn. St. 1927, § 9221, apply to all of the counties of the state, including the 36 which are in districts having only one resident judge, clearly indicates that the legislature was of the opinion that the "public interest" requires the calling in of an outside judge when the resident judge is challenged by the filing of an affidavit stating the existence of the belief of a party litigant that he was biased or prejudiced. Surely if the legislature under the constitutional provision referred to can legally provide that a party litigant can automatically disqualify a judge in a district having only one judge by the filing of an affidavit charging the resident judge with bias or prejudice,

it must possess the same constitutional right to provide that the governor, presumably disinterested, may call in an outside judge when in his judgment the public interest requires such action.

In my opinion, the public interest requires that cases be tried by judges whose fairness has not been subject to attack, and that when a resident judge is challenged by an affidavit filed with the governor which in his judgment is sufficient to disqualify the judge upon the ground of bias or prejudice the governor is justified in designating another judge to act.

In Berger v. United States, 255 U. S. 22, 41 S. Ct. 230, 234, 65 L. ed. 481, the Supreme Court of the United States had under consideration the United States statute somewhat similar to 2 Mason Minn. St. 1927, § 9221. Referring to the statute the court said [255 U. S. 35]:

"Its solicitude is that the tribunals of the country shall not only be impartial in the controversies submitted to them but shall give assurance that they are impartial, free, to use the words of the section, from any 'bias or prejudice' that might disturb the normal course of impartial judgment."

The court further said with reference to the statute [255 U. S. 35]:

"And in this there is no serious detriment to the administration of justice nor inconvenience worthy of mention, for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside?"

Commenting on the suggestion that the judge himself should pass on his own fairness and ability to try the case without bias, the United States Supreme Court said [255 U. S. 36]:

"To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the section is directed."

In U'Ren v. Bagley, 118 Or. 77, 245 P. 1074, 1075, 46 A. L. R. 1173, the court held that a statute providing for the change of judges upon the filing of an affidavit of prejudice is not unconstitutional as invading the province of the judiciary. In the opinion the court said [118 Or. 80]:

· "The single question involved is the constitutionality of the above act. It is the first time its validity has been squarely before this court for decision, although there are expressions in State ex rel. Johnson v. Circuit Court for Deschutes County, 114 Or. 6, 233 P. 563, 234 P. 262, and State v. Dobson [116 Or. 459], 241 P. 383, indicating a variance of opinion relative thereto.

"It is conceded in the very able briefs submitted that the language of this statute is absolute and mandatory. No discretion is vested in the judge against whom the affidavit is filed as to his recusation. When an affidavit is timely made and in substantial compliance with the statute the disqualification of the judge is accomplished so far as proceeding further in that particular cause is concerned. There is no issue of law or fact to determine. The course that the judge must pursue is fixed by statute."

In the case last cited the court further said [118 Or. 81]:

"Did the legislature go beyond its constitutional powers in enacting this law and thereby invade the province of a co-ordinate branch of the government? Under our constitutional system of government, the legislative, executive and judicial branches are required to function exclusively within their respective spheres. The success which our form of government has achieved in the past may be attributed largely to the fact that each co-ordinate branch has recognized the fundamental and salutary principle that there must be no encroachment upon the other. It remains, however, for the judiciary to say when there has been a transgression in this respect. This authority vested in the courts is one which should be exercised with extreme caution and only when there has been a plain and palpable abridgment of the powers of one department by another. To determine with precision the boundary between the respective co-ordinate branches of our government has ever been a difficult thing for the courts to do. The question at bar is in the twilight zone. Hence we must proceed with circumspection when called upon to say that there has been a legislative abridgment of judicial power. Courts are ever reluctant to annul by judicial sentence what has been enacted by the lawmaking power. In fact, when the

life of a statute is at stake it is entitled to the benefit of every reasonable doubt: Cooley's Constitutional Limitations (7 ed.) 252; State v. Laundy, 103 Or. 443, 204 P. 958, 206 P. 290; Smith et al. v. Cameron et al., 106 Or. 1, 210 P. 716, 27 A. L. R. 510; State v. Jacobson, 80 Or. 648, 157 P. 1108, L. R. A. 1916E, 1180."

It does not seem to me that the case of State ex rel. Decker v. Montague, 195 Minn. 278, 262 N. W. 684, 686, is controlling in this case. There there were four judges in the district. The provisions of 2 Mason Minn. St. 1927, § 9221, were applicable. The question before the court in that case was stated by Mr. Justice Olson as follows [195 Minn. 281]: "Does § 158 on the facts before the court authorize the executive designation of a substitute judge in this case?" In answering that question, after an exhaustive review of the authorities, the court said [195 Minn. 288]:

"Upon the facts here presented, there being four duly elected, qualified, and acting resident judges in the seventh judicial district, competent and willing to serve, no accumulation of business preventing an orderly and prompt trial, an outside judge may not be substituted by executive order because so to do would be a direct encroachment by the executive upon the functions of the judiciary and as such not constitutionally permissible."

In the case last cited where the district contained four judges, either party had the right to disqualify the judge before whom the action was pending by filing the statutory affidavit. There was no need to appeal to the governor to disqualify a judge claimed to be prejudiced and no basis for a finding that the public interests required the governor to intervene.

In this case, there being only one judge in Freeborn county, the defendants who were of the opinion that the judge entertained a feeling of bias toward them were without remedy unless the governor did intervene, and consequently there was a reason for the governor's finding that the public interest required him to intervene.

If the 1937 amendment of the statute relating to disqualifying the sitting judge by filing the statutory affidavit is sustained on the theory that it is within the constitutional provision because the

public interests require that no action be tried before a judge whose fairness is challenged, then there will be little occasion for the governor to intervene in the future or to find that public interest requires his intervention, because a remedy now is available in the 36 counties of the state the same as it was heretofore in the other 51.

I believe that the questions involved in this controversy could have been eliminated by counsel for relators indicating to Judge Peterson their desire that he call in an outside judge. I know of no district judge in this state who would not, upon a proper request, gladly assign litigation pending before him to another judge if apprised of the fact that there was some fear of bias or prejudice on his part, and I feel certain that the presiding judge in this case would have proceeded in that manner had he been given an opportunity to do so. For the reasons stated, I am of the opinion that the governor acted within his rights in the instant case.

PETERSON, JUSTICE (dissenting).
I concur in the dissent.

