### DOROTHY JONES v. GLEN V. JONES.[1]

May 21, 1954.

Nos. 36,287, 36,288.

---

[1]Reported in 64 N. W. (2d) 508.

*Olson & Powell,* for appellant.
*John J. Benton,* for respondent.

DELL, CHIEF JUSTICE.

This is an appeal from a judgment in a divorce action awarding the custody of two minor children of the parties to the plaintiff and also an appeal from an order adjudging defendant in contempt of court.

Plaintiff and defendant were married in 1926. At the time of the trial plaintiff, the wife, was 44 years of age and the defendant 46. They are the parents of five children who, when the case was tried, were of the following ages: Lucille 22, Glen, Jr., 20, Carol 16, Iris 14, and Gale 13. Only the custody of Iris and Dale were involved. Their custody was awarded to the plaintiff.

Before the commencement of the trial but after the term at which the case had been noticed for trial had convened, an affidavit of prejudice was filed by the defendant against the Honorable J. J. Hadler, one of the three judges of said district and the judge who had been assigned to and presided at said term. He refused to recognize the affidavit on the ground that it was filed too late, and he therefore presided at the trial. The trial resulted in findings in favor of the plaintiff which granted her the right to live separately and apart from the defendant, awarded her the custody of Iris and Dale and allowed her alimony and support money. Judgment was entered upon the findings and thereafter defendant was found guilty of contempt of court for failure to obey the judgment as well as prior

orders of the court granting custody of Iris and Dale to plaintiff and also for his failure to keep up the alimony payments as directed.

■ Defendant contends that the court erred in refusing to recognize and honor the affidavit of prejudice filed by him and in proceeding with the trial of said action.

On June 7, 1952, when the action was commenced, an order to show cause was issued by the Honorable D. H. Fullerton, one of the judges of said court. It directed the defendant to show cause before him on July 7 why an award of temporary alimony, support money, and attorney fees should not be made. Nothing is mentioned in the order concerning the custody of the children. On July 7 the parties appeared before Judge Fullerton but the hearing was dispensed with, counsel for the parties having then advised the judge that the matter would be worked out between them. Apparently their efforts proved futile since counsel for the plaintiff thereafter brought the matter to the attention of Judge Hadler, who, upon the pleadings and affidavits of the parties, on July 23, 1952, issued an order requiring defendant to pay plaintiff $150 a month for her support and the support of her minor children during the pendency of the action together with $65 to apply upon plaintiff's attorney's fees. The order contains no express provision awarding the custody of any of the children to the plantiff.

On July 23, when the order was made, defendant's sole income was $118.45 a month, which sum he received from the Veterans' Administration under a 60-percent disability rating due to a heart condition. While at that time his doctors had certified defendant to the Veterans' Administration and his former employer, Danube Mining Company, as totally disabled, his disability allowance had not then been increased. Eventually the allowance was made and he thereafter received $228.50 a month from the Veterans' Administration and $52 a month from the mining company. Defendant claims that the matter, resulting in the order of July 23, was brought to the attention of Judge Hadler by plaintiff without his knowledge and without an opportunity of his counsel to be heard and that his first knowledge that the matter had been considered by Judge Hadler

was when the order of July 23 was issued. Defendant claims that the matter should not have been brought before Judge Hadler or considered by him without defendant's knowledge and that an order should not have been made requiring defendant to pay alimony and support money substantially in excess of his entire monthly income.

On December 4, 1952, the case came on for trial before the Honorable Arnold C. Forbes, one of the judges of said court, by agreement of the parties. As far as was possible in a case of this type the issues were orally stipulated. The only matter left for consideration by the court, other than to have the case proved up as one of default, was the custody of Iris and Dale. After some evidence was introduced, Judge Forbes privately conferred with these children. Thereafter, in open court, in the presence of the parties but in the absence of the court reporter, he announced that because of the desire of Iris and Dale to live with their father he would grant their custody to the defendant. Counsel for the parties were instructed by Judge Forbes to inform the Veterans' Administration of his decision, and the matter was reset to be heard before him as a default matter on December 12. On December 12 plaintiff, apparently since she was not to have the custody of these children, repudiated the oral stipulation entered into on December 4, whereupon Judge Forbes continued the case to the February 1953 term of court for trial on all issues.

Prior to January 2, 1953, Iris and Dale were living with their mother at Grand Rapids. On that day they were taken to the defendant's home near Bovey by their brother Glen Jones, Jr. Iris and Dale have at all times consistently claimed that this was done at their request because of their desire to live with their father in preference to their mother, and defendant claims that he was in no way responsible for their return. Plaintiff claims that the facts justify an inference and finding that their return to the defendant on January 2 was brought about by his activities.

On January 17, 1953, Judge Hadler issued an order requiring the defendant to show cause before him on January 23 why he should not be held in contempt of court for his failure to make the pay-

ments to the plaintiff provided for under the order of July 23, 1952, and also for his failure to abide by said order of July 23 awarding the custody of Iris and Dale to the plaintiff, although as previously pointed out the order of July 23 contained no express provision awarding their custody to the plaintiff. The ex parte order of January 17 also provided that plaintiff should have the custody of Iris and Dale until the hearing on the order to show cause and required defendant to return said children to the plaintiff.

The hearing took place before Judge Hadler on January 23. Thereafter and on February 2 he issued his order in which he held that the order of July 23 awarded the custody of Iris and Dale to the plaintiff although it contained no express provision to that effect. He also held that the defendant had failed to make the payments required under the order of July 23; that he had not returned the children to the plaintiff as required under his order of January 17; and that his failure to make the payments and return the children was not excusable or justified. Defendant was thereupon adjudged guilty of contempt of court.

Defendant claims that he was unable to work because of his physical disability and was financially unable to meet the payments required by the order of Judge Hadler; that he was therefore not guilty of contempt of court. He also claims that the children were not returned to their mother because they protested bitterly saying that they would not again be subjected to the punishment, criticism, and unpleasantness of the plaintiff.

As punishment for contempt of court defendant was ordered imprisoned for a period of 60 days. However, execution of the sentence was stayed on condition that he forthwith pay the plaintiff the sum of $111.50 for alimony and support money for the month of February 1953 and $111.50 for each month thereafter and on the further condition that he forthwith return Iris and Dale to the plaintiff and also that he pay plaintiff's attorney $25 for attending the proceeding on January 23. The order expressly reduced the alimony and support money payments directed under the order of July 23 from $150 a month to $111.50 a month. It further provided that,

upon defendant's failure to meet promptly all of the conditions of said order and upon the filing of an affidavit by plaintiff or her attorney with the clerk of court setting forth the default, the sheriff of Itasca county, upon receipt of a certified copy of the said order, should take defendant into his custody and execute the penal provisions of said order forthwith without any further order of the court. Thereafter such an affidavit was filed, whereupon defendant was taken into custody by the sheriff on February 7, 1953, and confined in jail at Grand Rapids.

The term of court convened at Grand Rapids on February 17. Under a written notice dated February 7, 1953, Herbert E. Olson, Esq., of Bemidji, Minnesota, was substituted as attorney in place of the defendant's former attorney. Defendant claims that, while the notice of substitution bears date February 7, the notice, including the dating, was prepared by defendant's former attorney and that it was not received by Mr. Olson, nor was he substituted as attorney for the defendant, until after the term convened.

On March 3, 1953, defendant, through his new attorney, petitioned Judge Hadler for a writ of habeas corpus upon the ground that he was illegally and unlawfully detained under the order of February 2. An order for a writ of habeas corpus was issued by the judge on March 9, and on the same day a writ of habeas corpus was issued by the clerk of court returnable before Judge Hadler on March 12. Supporting defendant's petition for the writ of habeas corpus were affidavits of the defendant, Iris, Dale, Mary Hegland, the housekeeper of the defendant, and Tom Hegland, her husband, and also Paul Laramie, deputy sheriff of Itasca county. Counteraffidavits were submitted on behalf of the plaintiff. The affidavits submitted on behalf of the defendant assert that he had made every reasonable effort short of force to return Iris and Dale to the plaintiff; that they had cried and begged the defendant not to return them to the plaintiff. Iris and Dale claimed that they talked their older brother Glen, Jr., into taking them home to their father on January 2. Tom and Mary Hegland supported the claim of the defendant that he had done nothing to prevent or discourage the children from return-

ing to the plaintiff. They claimed that the defendant had used every effort to return the children to the plaintiff. The affidavit of the deputy sheriff shows that on February 7 he accompanied the plaintiff to the defendant's home north of Bovey. At that time the defendant was in jail at Grand Rapids under sentence for contempt of court. The affidavit states that at that time plaintiff endeavored to get the children to return to her home but without success; that she requested him to forcibly take the children to her home but that he declined and refused to do so without a court order or warrant; and that the children at that time definitely expressed their desire to remain in the home of the defendant.

The matter was submitted to the court by agreement of the parties upon affidavits, and on March 24 Judge Hadler made findings in favor of the plaintiff on all of the material issues involved. In rejecting the affidavits of the defendant and those submitted in his behalf, the judge, in a memorandum attached to the order, held that, while the defendant urged that his failure to return Iris and Dale was due to the refusal of the children to return to the plaintiff, the problem of their custody which had arisen was of the defendant's making and that he had not made a sincere effort to solve the problem. He directed that judgment be entered adjudging that the defendant was lawfully imprisoned under the order of February 2. In a separate order issued on the same day, he directed that the defendant be released from jail because he had made the money payments provided for under the order of February 2.

It appears without dispute that on April 3 Romaine Powell, Esq., an associate of defendant's attorney, advised Judge Hadler by telephone that defendant had indicated to him that he felt that some other judge should try the case, which was set for trial on April 9, and that Judge Hadler told Mr. Powell that he would not honor the request and suggested that an affidavit of prejudice be filed. On April 4 an affidavit of prejudice was executed by the defendant and on that day mailed to the clerk of court for filing. The affidavit stated:

"That particularly by reason of matters transpiring in this action subsequent to February 17, 1953, the opening of said February, 1953, general term of this court, your affiant makes and files this affidavit of prejudice for the reason that on account of prejudice or bias on the part of said judge, he has good reason to believe, and does believe, that he could not have a fair and impartial trial of said action on its merits and accordingly your affiant respectfully requests that Hon. J. J. Hadler forthwith secure some other judge of this court and judicial district to try said action, all pursuant to the provisions of M. S. A. 542.16."

Judge Hadler refused to honor or recognize the affidavit, and the case came on for trial before him at Grand Rapids on April 9. In his brief defendant claims, and the claim does not appear to be disputed by the plaintiff, that Judge Fullerton, who it appears was then in chambers at Brainerd, Minnesota, had been contacted by counsel for defendant and had indicated a willingness to try the case if a request was made of him by Judge Hadler to do so.

On April 9, before the trial commenced, an effort was again made to have Judge Hadler honor the affidavit of prejudice. Defendant was placed on the stand and, under interrogation by his attorney, gave the reasons set forth in the footnotes[2] as to why he thought

---

[2]"Mr. Jones: Well, I might say, some of the reasons is that it appeared to me that all, part, if not all, of my affidavits requesting in this writ order, involving my children and those who submitted affidavits in my behalf, were completely ignored, that in Judge Hadler's order that did finally release me from jail apparently recognized the affidavits of my opponents in every detail. I felt that if this Court feels that my affidavits were false, I don't know how they could accept my testimony today as being other than false. That is, my affidavits were made under oath as my testimony today will be and my only hope that the Court will accept them as my actual truth, and they will be.

"Mr. Olson: In other words, apparently what he is concerned about, certainly he feels and has indicated to me, that his credibility, so far as this Court is concerned, has already been determined by the Court's failing to recognize certain statements that he made under oath and affidavits, and with that background in mind that anything he should say on the witness

Judge Hadler was prejudiced against him. The judge again refused to recognize the affidavit, and the case proceeded to trial before him.

On June 4, 1953, findings were made and filed by Judge Hadler which were in favor of the plaintiff on all material issues. He directed that judgment be entered separating the plaintiff and the defendant from bed and board and awarded the custody of Iris and Dale to the plaintiff. He ordered that defendant pay plaintiff alimony and support money in the sum of $140 per month starting with the month of June and directed that the defendant's real estate be impressed with a lien to secure the payment of the alimony and support money awarded. On October 21, 1953, judgment was entered.

The plaintiff did not obtain the custody of the children under the judgment although it awarded custody to her. On November 10, 1953, Judge Hadler issued an order requiring the defendant to show cause on November 14 why he should not be found guilty of contempt of court and punished for failing to return Iris and Dale to the plaintiff in disobedience of the order of July 23; for his failure to return them to the plaintiff under the orders of January 17, February 2, and June 4 and the judgment of October 21; and also for his failure to make the payments to the plaintiff directed by the orders of February 2 and June 4 and the judgment of October 21. At the hearing on the order to show cause, affidavits were submitted by the defendant, Iris, Dale, and Theodore R. Rhode, and oral evidence was introduced on behalf of both the plaintiff and the defendant. It appeared therefrom that on November 11 and again on November 12, 1953, defendant took Iris and Dale to the home of the plaintiff. On November 11 plaintiff was not at home and they returned to the home of the defendant. On November 12 the children were left in front of the plaintiff's home by the defendant.

stand today under oath, the Court would not give any recognition to. That is his feeling.

"Mr. Jones: There is one statement I wanted to make, more than anything else, and also recognize, by Hon. Judge Hadler, and that was a statement that I had previously denied and contended and refused to obey, observe any laws and had stated I would do things as I pleased. Those statements are entirely false, and they do hurt me."

She was informed that the children were there and the defendant drove away. Even though Iris and Dale stated that they had promised the defendant to stay with the plaintiff, they refused to enter the house and according to their affidavits "hitchhiked" back to the defendant's home. He refused to permit them to remain there; and that same night Iris went to the home of Beverly Johnson, a girl friend, and Dale to the home of neighbors, Mr. and Mrs. Sanford Hanson, at which homes they were staying on November 14 at the time of the hearing on the order to show cause. That the children were determined not to stay with the plaintiff is illustrated by plaintiff's own testimony. When asked whether the children stayed with her when the defendant left them with her in front of her home, she said:

"A.   They didn't stay. They walked away and didn't even come home.

"Q.   [Mr. Benton]   Did you ask them to come?

"A.   I did. I told them you will make it worse for your dad, and they said, 'I don't care if they kill me,' and ran off.

"Q.   [Mr. Benton]   You heard them say that?

"A.   Yes."

Plaintiff also admitted at the trial that at the time the defendant was in jail on February 7 for contempt of court, at which time the plaintiff and deputy sheriff went to the home of the defendant to secure the custody of Iris and Dale, Dale said "why can't you let us stay here where we are happy instead of going with you" and that Iris "threw a fit" and said "No, I am not going home."

The defendant was, on November 20, found in contempt of court and as punishment was sentenced to jail for six months. It is from this order and the judgment of October 21 that the appeals were taken.

Formerly M. S. A. 542.16 prescribed the standard of timeliness for the filing of an affidavit of prejudice. This statute has now been superseded by Rule 63.03 of Rules of Civil Procedure. The statute and rule, except in minor respects, are substantially the same. In districts having two or more judges, such as we have under con-

sideration here, the rule, as did the statute, permits the filing of an affidavit of prejudice within one day after it is ascertained which judge is to preside at the trial or hearing. When such an affidavit is filed it operates *ipso facto* to disqualify the presiding judge from hearing the case. Nothing is left for judicial discretion.[3] The purpose of the time requirement is to guard against unreasonable delay, expense, surprise, and inconvenience to the court and litigants.[4] While some of the earlier cases[5] indicate that a strict construction was given to the statute, in the recent case of Wiedemann v. Wiedemann, 228 Minn. 174, 178, 36 N. W. (2d) 810, 813, this court held that the "statute [now embodied in the rule] governing the disqualification of a judge for bias * * * is to be given a *liberal construction* to avoid a sacrifice of that right on the altar of technicality." (Italics supplied.) This holding is in harmony with that of many other jurisdictions which take the view that disqualification statutes, being remedial, should be liberally construed to accomplish their intended object of assuring that justice is properly administered free from bias and partiality. Annotation, 10 A. L. R. (2d) 1311.

The principle which governs in disqualifying a judge under Rule 63.03 permitting the filing of an affidavit of prejudice is so well stated in the Wiedemann case that it bears restating here. In that case it was said (228 Minn. 177, 36 N. W. [2d] 812):

"* * * The controlling principle is that no judge, when other judges are available, ought ever to try the cause of any citizen, *even though he be entirely free from bias in fact,* if circumstances have arisen which give a bona fide appearance of bias to litigants. Payne v. Lee, 222 Minn. 269, 24 N. W. (2d) 259. It is to be remembered that in the overwhelming majority of cases, where a judge is disqualified for prejudice, no prejudice in fact exists, but merely cer-

[3]State v. Hoist, 111 Minn. 325, 126 N. W. 1090; State ex rel. Thompson v. Day, 200 Minn. 77, 88, 273 N. W. 684, 689 (dissent).

[4]See, State v. Olson, 195 Minn. 493, 263 N. W. 437.

[5]State v. Irish, 183 Minn. 49, 235 N. W. 625; State v. Olson, 195 Minn. 493, 263 N. W. 437.

tain circumstances which lead a litigant sincerely to believe that bias is present.

" '* * * In the administration of justice it is not only requisite that a judge should be honest, unbiased, impartial and disinterested in fact, but equally essential that all doubt or suspicion to the contrary should be jealously guarded against and eliminated. *Not only is it the duty of a judge to render a righteous judgment but it is of transcendent importance to the litigants and the public generally that there should not be the slightest suspicion as to his fairness and integrity.'* (Italics supplied.) People ex rel. Union Bag & Paper Corp. v. Gilbert, 143 Misc. 287, 288, 256 N. Y. S. 442, 444, affirmed, 236 App. Div. 873, 260 N. Y. S. 939.

"A litigant, though mistaken in fact, may conceivably assert with sincerity that he has good reason to believe, and does believe, that a judge is biased, and when he so believes his cause should be heard before another judge, if for no other reason than that confidence in the impartial administration of justice is essential to the preservation of any democratic government. When the impartiality of a judge is questioned, he need assert no defense of his judicial integrity other than a ready willingness to leave the trial of the cause to another jurist."

In the case of Payne v. Lee, 222 Minn. 269, 24 N. W. (2d) 259, this court stressed the importance of protecting the constitutional right of litigants to a fair and impartial trial. The protection of that right is the duty and obligation of the lawyer as an officer of the court. It is, however, equally his duty to assert such right in timely fashion to the end that there be no unnecessary delay in the orderly administration of justice. This fundamental right may be waived by failure to seasonably assert it. In the absence of fraud or other controlling circumstances which prevent the filing of an affidavit of prejudice within the time specified by Rule 63.03 or which justifiably mislead a party in failing to do so, the filing of an affidavit of prejudice, after the time specified in the rule, is without effect unless the purpose of the rule has otherwise been substantially satisfied. Wiedemann v. Wiedemann, *supra*.

Defendant claims that under controlling circumstances he was prevented from filing an affidavit of prejudice within the time specified by Rule 63.03. He contends that, while some of the occurrences prior to the commencement of the term on February 17 created some doubt in his mind as to whether he could receive a fair trial before the presiding judge at said term, he was not sufficiently satisfied that he would not receive a fair trial to justify the filing of an affidavit of prejudice before the term convened. His claim is that it was not until he had received, studied, and considered the findings and order of March 24, 1953, together with the memorandum attached thereto, in which all of the affidavits submitted by him including those of his children Iris and Dale were rejected and the affidavits of the plaintiff and those submitted in her behalf were accepted by the court and the writ of habeas corpus was discharged, that he became satisfied that he would be unable to obtain a fair and impartial trial because of the definitely expressed attitude of the presiding judge toward him, his witnesses, and their credibility. He contends that he thereupon acted promptly by having his counsel call the matter to the court's attention and request that the case be tried before another judge. That request having been refused, he thereupon filed his affidavit of prejudice and claims that he was entitled to have it honored.

While nothing in this opinion is intended, or should be construed, as criticism of the presiding judge, whose reputation for fairness and integrity is well known by the members of this court, the underlying principle of preserving the confidence of litigants as well as the public in our judicial system compels us to hold that under controlling circumstances occurring here after the term commenced, which need not be further detailed, the affidavit was timely filed and the trial should have been assigned to another judge. In this day of excellent communications, rapid transportation, and adequate accommodations, the services of another judge to try a cause, where an affidavit of prejudice has been filed, can usually be secured without delay or inconvenience. Here it is apparent that no delay would have occurred in the trial of the case, but even if it had there is no

showing that the parties would have suffered any harm or inconvenience. Where disqualification occurs and there is no other judge within the district who is qualified to try the case, resort may readily be had to Rule 63.04 of the Rules of Civil Procedure. The administration of justice should be beyond all suspicion of possible favoritism. Where the ability of a judge to try a cause fairly and impartially is questioned, he should have no reluctance in stepping aside. Where any doubt exists as to whether a judge has been properly disqualified under Rule 63.03, that doubt should be resolved in favor of his disqualification. We conclude that it was error not to honor the affidavit of prejudice and that, therefore, the judgment must be reversed and a new trial granted before another judge.

■ The order of November 20, adjudging the defendant guilty of contempt of court and directing his imprisonment in jail for a period of six months, is based, in part, upon the failure of the defendant to comply with the judgment of October 21. To what extent the judgment furnished the basis for the order holding the defendant in contempt and for the imposition of the sentence neither the order nor the memorandum attached thereto disclose. In that situation and because the judgment upon which the contempt is based in part must be reversed, we conclude, in the interest of justice, that the order should likewise be vacated and the proceeding returned for further consideration below before another judge.

Under the circumstances it is unnecessary to consider other issues.

Since there is to be a new trial, it is proper to state that since Iris is now 15 years of age and Dale 14 they are no longer too young to exercise judgment. In that situation, in the retrial of the case, the court should give such consideration to their desires respecting their custody as the evidence at the trial properly justifies. State ex rel. Feeley v. Williams, 176 Minn. 193, 222 N. W. 927.

Under M. S. A. 607.01 we are authorized, in our discretion, to allow the prevailing party costs not exceeding $25. Under this section, however, in all cases the prevailing party shall be allowed his disbursements necessarily paid or incurred. Under the circumstances here we conclude that there should be no allowance of costs

to the prevailing party; and in the event that defendant, as the prevailing party, taxes disbursements in this court against the plaintiff, an allowance under § 518.14 is granted to her to offset that item as a sum necessarily incurred by her to carry on this action and to defend the appeal. See, Molto v. Molto, 242 Minn. 112, 64 N. W. (2d) 154.

The judgment of October 21 is reversed and a new trial granted before another judge. The order of November 20 is vacated and the proceeding returned for further consideration below by another judge.

