### STATE EX REL. UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA AND OTHERS v. ALBERT H. ENERSEN AND OTHERS.[1]

March 24, 1950.

No. 35,234.

[1]Reported in 42 N. W. (2d) 25.

428

*Roger S. Rutchick, Francis M. Smith,* and *Kenneth J. Enkel,* for relators.

*Francis X. Helgesen,* for respondents.

KNUTSON, JUSTICE.

For the purpose of this decision, we may assume these facts to be true:

Respondent Minnesota State Industrial Union Council is a voluntary unincorporated association comprised of local industrial unions and local unions chartered by national and international unions and organizing committees affiliated with the Congress of Industrial Organizations (hereinafter called the CIO), city and county CIO industrial councils, district CIO councils, and joint CIO boards in the state of Minnesota, having its principal office in Minneapolis, Hennepin county, Minnesota. Relator United Electrical, Radio and Machine Workers of America (hereinafter called

UE) is an unincorporated association of persons organized as an industrial labor union admitting to membership persons employed in the electrical, radio, and machine industry, and issues charters to local unions comprised of employes in that industry. UE has its national headquarters in New York City, and it carries on its activities throughout the United States. It operates in the state of Minnesota and in Hennepin county. It has members and solicits members therein and seeks to represent them in negotiations with the employers. It also operates in this state and county through local unions affiliated with it. Among the locals chartered by UE is Local 1117 in the city of St. Paul. Relators George McDonald, Irvin Weir, Robert Bergstrom, Clarence Hathaway, Norman Mattson, August Flom, William Mauseth, Wesley Bjork, Charles Peters, Tobey Lapakko, Al Hensler, Henry Rapp, and Eileen Hanson are officers, international representatives, or agents of UE. Respondent Western Electric Company, Inc., is a corporation engaged in manufacturing goods which pass in interstate commerce, whose employes are members of Local 1117. A collective bargaining contract with Local 1117 was negotiated in 1947, was extended in 1948, and is due to expire on January 2, 1951, covering the terms and conditions of employment between Western Electric Company and its employes.

On November 10, 1949, Minnesota State Industrial Union Council as plaintiff commenced an action against relator UE and other defendants, namely, Albert Fitzgerald, James J. Matles, Julius Emspak, Ernest DiMaio, George McDonald, Irvin Weir, Robert Bergstrom, Clarence Hathaway, Norman Mattson, August Flom, William Mauseth, Wesley Bjork, Charles Peters, Tobey Lapakko, Al Hensler, Henry Rapp, Eileen Hanson, and Western Electric Company, Incorporated, in a representative capacity in behalf of Local 1117 and other locals similarly affected. We are concerned only with the action brought for Local 1117 in this case. In its complaint in that action, plaintiff alleges substantially the foregoing facts and then alleges that the locals participating in creating UE became affiliated with it for the following purposes: (1) To promote

the trade union interests of the members of said locals; (2) to promote and protect the democratic system of America and the civil liberties guaranteed by it; and (3) to secure affiliation with the Congress of Industrial Organizations and thereby secure its aid in the promotion of the first two objectives above set out, and that it was an essential condition of the contract of affiliation of said locals with UE and was an essential part of the consideration moving from UE to said locals under such contract of affiliation and was an indispensable part of the performance due from UE under such contract of affiliation that UE would do and continue to do each of the following things: (a) Devote itself to promoting the trade union interests of its affiliated locals and their members; (b) loyally adhere to the United States and to its democratic system; (c) refrain from conduct which would prevent it or its affiliated locals from serving as collective bargaining agents, or which would seriously disable or embarrass it or its affiliated locals in representing the interests of their members; and (d) affiliate with and remain affiliated with the CIO, to the end that UE might, through the CIO, best promote the two objectives above set forth; and that UE has failed to do and to continue to do each and every one of the things set out in this paragraph. It is then alleged that defendant Western Electric Company has presently in force and effect a collective bargaining contract with Local 1117, which contract was negotiated in 1947, was extended in 1948, and is due to expire on January 2, 1951, and that UE has failed to devote itself to promote the trade union interest of its affiliated locals and their members. It is further alleged that local unions affiliated with UE are the sole and exclusive owners of certain funds, real property, and other assets of value; that all funds, property, and assets now held by the locals are its exclusive property, and that no part of it belongs to UE; that during the period from August 1937 until the present time the locals have accumulated funds, real property, and other assets, which funds, property, and other assets are derived and were accumulated from the dues, initiation fees, and assessments paid to local unions by its members; that certain of the funds, property,

and other assets of said locals are derived from dues checked off to said locals pursuant to collective bargaining agreements currently in force and effect, and under the terms of such contracts the dues checked off are payable to the local union with which each company has contractual relations; and that the funds, assets, and other property which are owned by said locals are held in trust for its members.

The complaint then alleges that on November 2, 1949, the CIO expelled UE and cancelled and revoked its charter and that by reason thereof UE breached its contract of affiliation between it and the locals, including Local 1117; that at a meeting called on November 4, 1949, the members of Local 1117, or substantially all of them, voted to discontinue the affiliation of Local 1117 with UE; and that upon such disaffiliation and secession Local 1117 continued to own all funds and property theretofore belonging to or held in the name of such local. It likewise continued to be the contracting party in or beneficiary of all outstanding collective bargaining contracts and to be entitled to all rights under such contract and under dues checkoff authorization cards.

The complaint then alleges that on November 2, 1949, defendants entered into a conspiracy and plot among themselves, and with other persons, wrongfully to convert and transfer the funds, property, books and records, and assets of said locals for the use and benefit of themselves, their fellow conspirators, and fellow travelers; wrongfully to interfere with the administration of the affairs and activities of said locals by its members and duly elected officers; and wrongfully to destroy the status of the locals as labor organizations and to disband said locals; that, in furtherance of said conspiracy, defendants claimed, have seized, and are threatening to seize the assets, property, funds, and records of the locals, have attempted to or are threatening to convert, appropriate, and transfer the assets, properties, funds and books, and records of said locals to their fellow conspirators, and have attempted to, actually did, or threatened to convert and make use of the authority, prestige, and good will of said locals to their own use and purposes and to

the use and purposes of other persons; that on November 9, 1949, defendants, in furtherance of said conspiracy, purported to hold an election for the purpose of naming successor officers to those regularly elected by Local 1117; and that defendants Tobey Lapakko, Al Hensler, Henry Rapp, Eileen Hanson, and other persons, whose names are unknown to plaintiff, fraudulently claim and purport to be the legal and bona fide officers of Local 1117.

The complaint contains many other allegations, but for the purpose of this inquiry the foregoing will suffice.

Plaintiff asks injunctive relief restraining defendants from seizing, possessing, and assuming control of, or retaining possession and control of the charter, seal, safe, premises, funds, and other property of the local or interfering with its action; also from representing themselves as officers of said locals or as successors to said locals, or converting or making use of the authority, prestige, and good will of the locals, or from interfering with the administration of or claiming any right under any collective bargaining agreement now existing between any employer and said locals or of which said locals are the beneficiary. It further asks injunctive relief preventing Western Electric Company from recognizing, as a collective bargaining representative of its employes, any of the defendants named in the complaint and any agent or representative of defendants, save and except for the duly elected or appointed officers, executives, board members, trustees, and stewards of Local 1117 who held office and were recognized by said company on November 1, 1949, including president Louis Ervin, recording secretary Gus DelFiaco, C. C. O., financial secretary Florence Finnegan, executive board members Lee Parks and Jack Frost, and trustee Robert Casci, and, in substance, requests injunctive relief directing Western Electric Company to withdraw recognition as an officer or agent of Local 1117 those persons purporting to be such under the alleged election held on November 9, 1949.

Prior to the service of the summons and complaint in this action, plaintiff applied ex parte to one of the judges of the district court of Hennepin county for a restraining order prohibiting and restrain-

ing defendants from doing and performing certain acts in connection with the subject matter of the action. Such ex parte restraining order was issued by the judge of the district court. It expired by its terms on February 6, 1950, and we are not concerned with the validity of such restraining order in this proceeding. That matter came before us heretofore, and we held that the order by its terms had expired and that the question raised had become moot. Consequently, an alternative writ of prohibition to prevent the enforcement of such restraining order was discharged. See, State ex rel. United Electrical, R. & M. Workers v. Weeks, 230 Minn. 581, 41 N. W. (2d) 177.

Defendants, except Western Electric Company, demurred to the complaint. Thereafter, certain locals intervened in the action, and they will be referred to hereinafter as the interveners, without naming them. A motion for a temporary injunction was set for hearing on February 6, 1950. It was continued by consent to February 10, and again on February 10 to February 16. On February 11, 1950, Irvin Weir, one of the defendants, filed an affidavit of prejudice against the Honorable John A. Weeks, to whom said case was assigned, in his behalf and in behalf of all the other defendants. The matter was then assigned by Judge Weeks to the Honorable Albert H. Enersen. On February 16, 1950, the attorney for defendants and the attorney for the interveners filed separate affidavits of prejudice against Judge Enersen. Judge Enersen refused to recognize the affidavit of prejudice as to defendants, but did recognize it as to the interveners. He thereupon proceeded to hear and determine the application for a temporary injunction against defendants, and the injunction thereafter issued *pendente lite* is the subject of the present petition. In order to present this matter intelligently, it is necessary to set forth the pertinent parts of the temporary injunction which was so issued. It provides as follows:

"* * * It Is Hereby Ordered that the Defendants and each of them shall be and are restrained and enjoined *pendente lite* from carrying on, or threatening to carry on any of the following acts:

"(a) Seizing, possessing, and assuming control of or retaining possession and control of the charter, seal, safe premises [*sic*] furniture, fixtures, equipment, books, records, papers, files, vouchers, funds, assets, bank accounts, finances, stocks, bonds and other property of said locals.

"(b) Converting, diverting or appropriating the funds or properties of said Locals to uses and purposes not in accordance with the constitution of said Locals, and in particular to the uses and purposes of defendants or any of them.

"(c) Interfering with the premises or meeting place of said Locals, or suspending the duly elected and qualified officers of said Locals, or suspending the meetings or said Locals; or suspending the publication by said Locals of its newspapers; or interfering in any other way with the affairs activities [*sic*] and functions of said Locals.

"(d) Representing themselves as officers of said Locals, or as successors to said Locals, or converting or making use of the authority, prestige and good will of said Locals.

"(e) Interfering with the administration of or claiming any rights under any collective bargaining agreement now existing between any employer and said Locals, or of which said Locals are the beneficiary.

"(f) Interfering with the administration or of claiming any rights under cards authorizing the checkoff of dues to said Locals,

"(g) Interfering with, restricting, preventing or otherwise obstructing said Locals, its officers and agents, from taking possession of any and all funds, assets, and property belonging to said Locals, including its books, records, furniture, machinery and equipment; premises, bank accounts and any and all property of whatsoever kind or nature.

"(h) Interfering with, restricting or preventing said Locals from managing its own affairs, and disbursing its own funds, in accordance with the provisions of its by-laws and constitution.

"(i) The Defendant, Western Electric Company, Incorporated, is restrained and enjoined from recognizing as the collective bargaining representative of its employees any of the Defendants

named herein who purport to be officers of representatives of the Intervener Local 1117, United Electrical, Radio and Machine Workers of America, a voluntary Unincorporated labor organization, hereinafter called U. E. Local 1117.

"(j) Directing the Defendant Western Electric Company to withdraw recognition as an officer, executive board member, trustee, steward, representative or agent of any of the Defendants named herein notwithstanding that such Defendants were recognized by the company as a representative, officer, agent or steward on November 1, 1949, by said Defendant Company.

"(k) The Defendant, Western Electric Company, shall recognize, adhere to and abide by the provisions of the collective bargaining agreement entered into on the second day of July, 1947, by and between the Western Electric Company, Incorporated and the Union of Electrical, Radio and Machine Workers of America, CIO, in behalf of and in conjunction with Local 1117 and shall further adhere to and abide by the provisions of said contract as amended on August 23, 1948, including but not limited to the amendments relating to the reopening of wage negotiations; and shall recognize until further order of this Court, Local 1117, International Union of Electrical, Radio and Machine Workers of America, CIO, hereinafter referred to as I. U. E., Local 1117, as the duly authorized representative of the employees covered by said contracts (save and except for employees in the IAM Unit) for the purpose of administering said contracts. Said I. U. E., Local 1117, shall be accorded by Defendant, Western Electric Company, all the rights and privileges accruing to the collective bargaining representative in the contract hereinbefore referred to. It is further order [sic] that said company shall forthwith pay and turn over to the Treasurer of I. U. E., Local 1117, (which position is currently held by Mr. Lee Parks) all monies presently held by the Company as union dues deducted from employees salaries pursuant to article 3 of said contract, entitled 'Payroll Deductions of Union Dues' which sums the Court is informed involves dues checked off by the Company during the months of X-December, 1949 and January, 1950, and shall

furthermore and until further order of this Court continue to transmit said dues as provided for in Article III of said collective bargaining contract to Mr. Lee Parks (or his successor) as Treasurer of I. U. E., Local 1117.

"It is further order [*sic*] that such payroll deduction of Union dues shall be made pursuant to authorization by employees in favor of Local 1117, United Electrical, Radio and Machine Workers of America, or authorization by employees in favor of Local 1117, International United Electrical, Radio and Machine Workers of America, CIO.

"(1) All funds collected by and on behalf of U. E., Local 1117, or I. U. E., Local 1117, or any or all funds paid by the Defendant, Western Electric Company, to the Treasurer of I. U. E., Local 1117, pursuant to this order shall be immediately deposited in the bank account or account of said I. U. E., Local 1117, and all funds disbursed therefrom shall be by check signed by the duly authorized officers of I. U. E., Local 1117, authorized to sign the same by said Local Union. The Treasurer shall make the necessary endorsements so as to provide for the depositing of any checks received from the Company, as herein ordered.

"A full accounting shall be kept thereof, both of receipts and disbursements, and all funds expended in any calendar month shall be such as are reasonable, just and proper and in accordance with past practices before the dispute herein involved arose. In addition, said Defendant, United Electrical, Radio, and Machine Workers of America, and officers and agents and anyone claiming to work for or on their behalf and said interveners, both as an organization and as individuals, and anyone claiming to work under, by or on their behalf are hereby restrained from in any way claiming or collecting any funds, dues or other claims for or on behalf of said Defendant, United Electrical, Radio and Machine Workers of America from the members or claimed members of said Local or others.

"It is the intention of the Court that the processing of all grievances including arbitration, bulletin board privileges, wage re-negotiations and the contractual rights of the employees under the col-

lective bargaining contract hereinbefore referred to in accordance with past practices, shall be carried on in behalf of the employees involved, as in the past, by the officers, employees and stewards of Local 1117 now claiming affiliation with the International United Electrical, Radio and Machine Workers of America, CIO. All others are hereby restrained and enjoined from carrying on or attempting to carry on such negotiations or from representing or attempting to represent the employees in any such disputes.

"(m) That there shall be furnished by, or on behalf of Plaintiff, a surety bond in favor of the Defendant, Western Electric Company, in an amount to be at all times equal to or in excess of dues money paid or owed to Local 1117 pursuant to Paragraph 'A' above; said bond to be issued for the purpose of protecting Western Electric Company against any judgment of any Court of competent jurisdiction requiring said Western Electric Company to pay to any other person or labor organization except Local 1117, International United Electrical, Radio & Machine Workers of America, CIO, dues monies paid to Local 1117, International United Electrical, Radio and Machine Workers of America, CIO, pursuant to this order."

It is the contention of defendants and interveners that a writ of prohibition should issue here on the ground that the court, for several reasons, lacked jurisdiction to hear and consider said matter. In the first place, defendants contend that Judge Enersen was without power to hear the application for a temporary injunction at all after the filing of the affidavit of prejudice by defendants and interveners. In the second place, defendants and interveners contend that, even though this contention is untenable, the court lacked jurisdiction to determine the question of who should have the right to handle the funds and property of the union and to administer the contract which was in existence with the Western Electric Company. It is the contention of relators that congress has preëmpted the field of labor relations and that the National Labor Relations Board has jurisdiction to the exclusion of our state courts in determining who shall be the bargaining representative of the em-

ployes of an employer engaged in interstate commerce; hence, that our state court has no jurisdiction to determine who shall administer the contract with the Western Electric Company, which is admittedly engaged in interstate commerce.

Upon the application of defendants and interveners, we issued our alternative writ of prohibition on March 3, 1950.

It is conceded by defendants and interveners that certain portions of the court's injunction were within the jurisdiction of the court. It is admitted that the court had power to issue an injunction preventing defendants and interveners from seizing, possessing, and assuming control of the property of Local 1117, but the main contention of defendants and interveners is that the court had no jurisdiction to issue that portion of the injunction identified as paragraphs (i), (j), (k), (l), and (m).

■■■■■ In considering the questions involved in this case, there are certain well-established principles relating to the issuance of a writ of prohibition which must be kept in mind. A writ of prohibition is an extraordinary writ issued out of this court for the purpose of keeping inferior courts or tribunals or other officials invested with judicial or quasi-judicial authority from going beyond their jurisdiction. Dayton v. Paine, 13 Minn. 454 (493); State v. Laughlin, 204 Minn. 291, 283 N. W. 395; State ex rel. Laurisch v. Johnson, 216 Minn. 219, 12 N. W. (2d) 343. Three things are essential to justify its issuance: (1) That the court, officer, or person is about to exercise judicial or quasi-judicial power; (2) that the exercise of such power is unauthorized by law; and (3) that it will result in injury for which there is no other adequate remedy. State ex rel. Hahn v. Young, 29 Minn. 474, 523, 9 N. W. 737, 738; State ex rel. Roberts v. Hense, 135 Minn. 99, 160 N. W. 198. It is a preventive rather than a corrective remedy. State ex rel. Jonason v. Crosby, 92 Minn. 176, 99 N. W. 636. A writ of prohibition is not one of right, but of discretion. In re Estate of Davidson, 168 Minn. 147, 148, 210 N. W. 40, where we said:

"A writ of prohibition is not one of right but of discretion. 'In general it is a good reason for denying it, that the party has a complete remedy in some other and more ordinary form.' State ex rel. Lasher v. Municipal Court, 26 Minn. 162, 2 N. W. 166, followed in State ex rel. Berryhill v. Cory, 35 Minn. 178, 28 N. W. 217. In each case it was held that whenever in an ordinary action it becomes necessary for the court to decide upon its own jurisdiction, and error in deciding that question can be corrected upon appeal, writ of error or certiorari, a writ of prohibition should not be granted."

 The first contention of relators is that Judge Enersen had no authority to proceed after affidavits of prejudice had been filed against him by defendants and interveners. So far as the defendants are concerned, it is enough to say that they had already filed a previous affidavit of prejudice against Judge Weeks. A defendant, as a matter of right, may disqualify only one judge. State v. Gardner, 88 Minn. 130, 92 N. W. 529. We have held that where one party disqualifies a presiding judge the other party may disqualify the substituted judge. State ex rel. Olson v. Schultz, 200 Minn. 363, 274 N. W. 401. But that does not help the defendants here. All the defendants joined in the original affidavit, and it was proper to disregard their attempt to disqualify the substituted judge. Relators next contend that if that is true the court could not divide the motion so as to hear it against defendants and refer it to another judge as it applied to the interveners. All we need say about that is that interveners are not bound by the injunction; consequently, it is difficult to see how they can suffer such injury as would justify the issuance of the extraordinary writ of prohibition on this ground.

█ Stripped to its essentials, relators contend that, inasmuch as UE was once designated as the collective bargaining representative of the employes of Western Electric Company by the National Labor Relations Board, and since it has exclusive jurisdiction to determine who shall be such bargaining representative, UE and it alone may administer the contract which was negotiated and which exists between Western Electric Company and its employes, and

that the courts of this state have no jurisdiction to require Western Electric Company to recognize any other organization as the representative of its employes.

Respondents, on the other hand, contend that the rights of UE to represent the employes of Western Electric Company are derived from and based on its contract with Local 1117; that it has breached that contract; and that on that account Local 1117 has disaffiliated from UE and as a consequence has a right to administer the contract for its members, who are the ultimate beneficiaries of the contract and the owners of the assets which have been and are being acquired.

In their affidavit in support of a petition for a writ of prohibition, relators set forth the irreparable injury which they will allegedly suffer if the writ is not issued, as follows:

"That if said paragraphs (i), (j), (k), (l) and (m) of said Order Granting Injunction Pendente Lite, Exhibit 'G', is enforced, these Relators, the said employees of said St. Paul plant of defendant Western Electric Company, Incorporated, whom these Relators represented, and said Western Electric Company, Incorporated, itself, will suffer irreparable injury to their and its property rights by reason of the fact that said paragraphs (i), (j), (k), (l), and (m) of said Order Granting Injunction Pendente Lite, Exhibit 'G', mandatorily require said Western Electric Company, Incorporated to pay so-called union dues check-offs to persons not entitled to receive the same; that said paragraphs (i), (j), (k), (l) and (m), of said Order Granting Injunction Pendente Lite, Exhibit 'G', because of its invalidity, affords said Western Electric Company, Incorporated no protection against its liability to pay the same to the associations and persons entitled to the same under said collective bargaining agreement; and that said paragraphs (i), (j), (k), (l) and (m) of said Order Granting Injunction Pendente Lite, Exhibit 'G', mandatorily require said Western Electric Company, Incorporated, to recognize and bargain with a collective bargaining agent, not entitled to be such, and affords said company

no protection against its liability and responsibility to recognize and bargain with the association and persons entitled to such recognition."

So far as any injury on account of collection of dues or check-offs is concerned, we are convinced that all parties are amply protected by the provision of the court's injunction requiring plaintiff to provide a surety bond in an amount equal to or in excess of any amount collected from or paid by Western Electric Company if it pays to the wrong party. Can we then find other irreparable injury for which there is no other remedy at law? It is evident that a genuine dispute exists as to who should be entitled to administer the contract existing between Western Electric Company and its employes. That matter will ultimately have to be determined upon evidence adduced at the trial of the action itself.

■ It seems to us that it goes without saying that Local 1117 derives its existence from its membership and that UE in like terms exists by virtue of its affiliated locals. Both are unincorporated associations having no legal entity separate and apart from their memberships. The members are the ultimate beneficiaries of the contract. The locals, as well as UE, exist for the purpose of furthering the interests of the employes, and not the employes for the benefit of the labor organization. While we refrain from expressing any opinion concerning the merits of the controversy, it seems clear that the ultimate determination of the questions presented here will have to be made after a trial and that less harm will result if the terms of the injunction are carried out *pendente lite* than if we were now to restrain its enforcement. To issue a writ of prohibition under the circumstances here existing would leave the whole matter in a chaotic state, where neither the innocent employer, the employes, nor the various labor organizations would know who had any rights or what they are. The purpose of a writ of prohibition is to prevent, not create, turmoil. We believe that justice will be served best by denying the application for a writ of prohibition, thereby permitting enforcement of the temporary injunction *pen-*

*dente lite* until the rights of all the parties may be determined and declared after a full trial of the issues on the merits.

Writ discharged, with costs to respondents.

Mr. Justice Peterson took no part in the consideration or determination of this case.

