# WALTER G. BASKERVILLE, SR., v. EDNA D. BASKERVILLE.[1]

March 9, 1956.

Nos. 36,700, 36,701.

---

[1]Reported in 75 N. W. (2d) 762.

*Edna D. Baskerville,* pro se, *Emerson Hopp,* and *Chester W. Johnson,* for appellant.

*Perry R. Moore* and *Mackall, Crounse, Moore, Helmey & Palmer,* for respondent.

MATSON, JUSTICE.

Defendant appeals from a judgment granting plaintiff an absolute divorce and also from an order denying her motion for a new trial.

Plaintiff brought his action for an absolute divorce on the ground of cruel and inhuman treatment and requested custody of the two minor children, namely, Walter G. Baskerville, Jr., and Harriet Ann Baskerville, of the respective ages of 15 and 13 years at the time of trial. Defendant, by her cross complaint, asked for a divorce on the

grounds of habitual drunkenness and cruel and inhuman treatment. She also asked for custody of the children. The trial, which began on October 4, 1954, lasted approximately five weeks.[2]

The trial court granted plaintiff an absolute divorce and awarded him the custody of the children. After finding that the defendant possessed (as a result of prior gifts to her by the plaintiff) sound marketable securities of the value of approximately $40,000 from which she derived a monthly income of $136.25, the trial court awarded her alimony of $500 per month. The trial court found that defendant had employed one of her attorneys on a contingent fee contract basis whereby he was to receive 15 percent of any and all alimony and property awarded to her, and further that the other attorneys appearing in her behalf were employed by such attorney as his assistants. It was determined by the trial court that defendant's attorneys were reasonably entitled for their services to a fee of $2,750.

After entry of judgment for the plaintiff, defendant moved for a vacation of the judgment and for an amendment of the findings and conclusions of law upon which such judgment was based or in the alternative for a new trial. This motion was denied and we have this appeal from such order and from such judgment.

We have issues as to: (1) The disqualification of a trial judge for bias; (2) the admissibility of evidence as to the fee arrangement be-

[2]This case is unique in that we have neither pleadings nor briefs in the usual sense. Instead of stating the facts constituting the causes or grounds of divorce in ordinary and concise language, without repetition, as required by M. S. A. 518.10, the so-called pleadings total 112 pages consisting mostly of repetitious evidentiary matter. It is only fair to observe that the pleadings started with a complaint of 14 pages. Instead of briefs summarizing the facts and pinpointing the salient legal issues, the controlling authorities, and the applicable legal principles, we have a catalog of 88 assignments of error and, all told, 403 pages of printed material or the equivalent in volume of a hornbook on domestic relations. See American Law Institute's 1954 treatises on conduct of appeals (A Case on Appeal—A Judge's View by Honorable Herbert F. Goodrich, pp. 1, 10 to 13; Conduct of the Appeal— A Lawyer's View by Ralph M. Carson, pp. 36, 57 to 74; The Argument of an Appeal by John W. Davis, pp. 96 to 109).

tween the wife and her attorneys when there is no dispute between them as to the attorneys' fees; (3) the validity of a contingent fee contract in divorce cases; (4) the availability in divorce cases of the discovery procedures under the new rules of civil procedure; (5) the right of a trial court to deny or limit an inquiry into the internal affairs of third-party corporations in which the husband is a minority stockholder for the purpose of determining the net worth of the corporations as a means of establishing the value of the husband's stock; (6) the right of a trial court to fix the amount of alimony without ascertaining and taking into consideration the value of the husband's property; and (7) the reasonableness of the alimony awarded.

## DISQUALIFY ONE JUDGE UNDER RULE 63.03

■ Defendant filed an affidavit of prejudice against Judge Paul S. Carroll. When the case was subsequently assigned to Judge John A. Weeks, the defendant made an oral ex parte request that the latter also disqualify himself for bias. Judge Weeks indicated that defendant might file an affidavit of prejudice if she so desired. Without more, the case came on for trial, and the issue of bias was not again raised until defendant made a motion for a mistrial near the close of the case. Either party to an action, by filing an affidavit of prejudice under Rule 63.03 of Rules of Civil Procedure (which supersedes M. S. A. 542.16), may, as a matter of right, disqualify only one judge.[3] On a multiple bench a substituted judge will usually voluntarily disqualify himself for prejudice when either party makes any seasonable showing of prejudice unless it appears that the assertion of such alleged prejudice is for the unjustifiable purpose of eliminating a succession of judges in an effort to obtain a so-called favorable judge.

---

[3]See, State ex rel. United Elec. R. & M. Workers v. Enersen, 230 Minn. 427, 42 N. W. (2d) 25; State v. Gardner, 88 Minn. 130, 92 N. W. 529. Decisions construing § 542.16 are applicable to Rule 63.03. See, 3 Youngquist & Blacik, Minnesota Rules Practice, p. 447.

DISQUALIFICATION OF SUBSTITUTED JUDGE UNDER RULE 63.02

■ Although a presiding judge has been disqualified as a matter of right under Rule 63.03, a substituted judge may be disqualified under Rule 63.02 (which has superseded § 542.13) upon a showing that he is interested in the determination of the cause or that he might be excluded for bias if he were acting therein as a juror. After a litigant has once disqualified a presiding judge as a matter of right under Rule 63.03, he may disqualify the substituted judge under Rule 63.02 but only by making an affirmative showing of prejudice and by seasonably implementing such showing by appropriate motion[4] or by obtaining a writ of prohibition.[5]

WAIVER OF RIGHT TO DISQUALIFY JUDGE FOR BIAS

■ In the instant case defendant went to trial without taking any affirmative action whatever to disqualify the substituted judge for bias, and she is now in no position to complain. It is the duty of the lawyer as an officer of the court to act in a timely manner in asserting his client's right to disqualify a judge for bias to the end that there may be no unnecessary delay in the orderly administration of justice.[6] A litigant who, in the absence of fraud ·or other controlling circumstance, elects to go to trial without taking timely and appropriate action to disqualify a judge for bias waives his right to assert such bias.[7] Whether a mistrial may ever be declared for *actual* bias we need not here determine since the record herein fails to disclose such bias.

[4]See, Wiedemann v. Wiedemann, 228 Minn. 174, 36 N. W. (2d) 810.

[5]See, State ex rel. Burk v. Beaudoin, 230 Minn. 186, 40 N. W. (2d) 885; Payne v. Lee, 222 Minn. 269, 24 N. W. (2d) 259; State ex rel. Olson v. Schultz, 200 Minn. 363, 274 N. W. 401. What constitutes a disqualifying bias under Rule 63.02 or pursuant to Minn. Const. (Bill of Rights) art. 1, § 8, need not be explored here. See, Jones v. Jones, 242 Minn. 251, 64 N. W. (2d) 508; Payne v. Lee, *supra;* 3 Youngquist & Blacik, Minnesota Rules Practice, pp. 444 to 451.

[6]Jones v. Jones, *supra.*

[7]Jones v. Jones, *supra;* Wiedemann v. Wiedemann, *supra.*

NONPRIVILEGED STATUS OF FEE ARRANGEMENTS WITH CLIENT

■ The court did not err in overruling objections to questions put to the defendant concerning the fee arrangements she had with her attorneys whereby it was disclosed that the latter were to receive for their services 15 percent of any alimony and property awarded to her. No privilege between attorney and client was involved in contravention of § 595.02. This court has held that the creation of the attorney and client relationship is not privileged.[8] The fact of the creation or the existence of the relationship of attorney and client is within the attorney's own knowledge, and that knowledge is collateral to, but not an ingredient of, any confidential communication upon which the attorney is asked to give professional advice or aid. The fact of retainer is not derived from information communicated by the client but is only an incidental byproduct. Likewise, the fee arrangements made between attorney and client are collateral to the relationship and are not a part of any confidential communication to which a claim of privilege may attach.[9] In Strickland v. Capital City Mills, 74 S. Ct. 16, 21, 54 S. E. 220, 222, 7 L.R.A. (N.S.) 426, 430, the court held:

"* * * The fee contract, whether regarded as made preliminary to the relation of attorney and client, or at the close of such relation in compensation for services rendered, or whether made during the existence of such relation, is really collateral to the professional relation, is not strictly a part of it, and has no bearing upon the merits of the matter, upon which professional aid was invoked."[10]

Our holding that no privilege attaches to the fee arrangement between attorney and client is in accord with the basic reason which gives rise to the privileged status of certain confidential communications. The reason underlying the attorney-client privilege is to encourage a client to disclose fully the facts and circumstances of

---

[8]Eickman v. Troll, 29 Minn. 124, 12 N. W. 347; Henderson v. Eckern, 115 Minn. 410, 132 N. W. 715.

[9]See, 58 Am. Jur., Witnesses, § 510.

[10]See, In re Martin, 141 Ohio St. 87, 47 N. E. (2d) 388; 58 Am. Jur., Witnesses, § 510; McCormick, Evidence, § 94; 66 A. S. R. 213.

his case to his attorney without fear that he or his attorney will be compelled to testify as to the communications had between them.[11] Wigmore, in setting out the four fundamental conditions upon which is based a privilege of nondisclosure of communications between persons standing in a confidential relationship (including attorney and client), states that the element of confidentiality must be of such a nature that it is essential to the full and satisfactory maintenance of the relation between the parties.[12] It is difficult, if not impossible, to see how the denial of the privilege as to communications regarding fees would have an adverse effect on a client's willingness to disclose fully the facts relative to his case or that such a privilege is in any way essential to the preservation and maintenance of the attorney and client relationship.

### Fee Arrangement Relevant and Material in Awarding Alimony

■ Not only was the fee arrangement not privileged but testimony with respect thereto was both relevant and material to a proper determination of the issues. It is the function of a court in a divorce case to make property and alimony awards and to make an allowance for attorney's fees. In awarding alimony and property to a wife the court must consider her ability to live in the manner to which she has become accustomed. It follows that the court may deem it necessary to consider what amount the wife has agreed to pay for legal services so that its provisions for alimony and property awards are not in substantial part rendered nugatory. The court is entitled to all the facts that would influence its decision. This is strikingly true in the case of a contingent fee contract dependent upon the amount of alimony and support money awarded to the wife, such as in this case, since a contingent fee is deducted from the amount awarded to her and therefore tends to frustrate and

---

[11]See, McCormick, Evidence, § 91; 8 Wigmore, Evidence (3 ed.) § 2291.

[12]8 Wigmore, Evidence (3 ed.) § 2285; see Brown v. St. Paul City Ry. Co. 241 Minn. 15, 33, 62 N. W. (2d) 688, 700, 44 A. L. R. (2d) 535, for excellent summary of elements of relation.

defeat the court's effort to make suitable provisions for the wife. See, In re Smith, 42 Wash. (2d) 188, 196, 254 P. (2d) 464, 469.

### CONTINGENT FEE CONTRACT IN DIVORCE ACTION VOID

■ In the second place, testimony as to the fee arrangement was relevant and material from the standpoint that, although a divorce suit is on its face merely a controversy between husband and wife, the state occupies the position of a third party charged with the duty of protecting the public welfare.[13] Since the continuance of the marriage relation is deemed essential to the public welfare, the state is interested in its preservation. Sound public policy demands that, when differences arise between parties to a marriage, no obstacle shall be placed in the way of their reconciliation. "Consequently, it is not fitting that it should be for the interest of an attorney that there should be no reconciliation. If compensation for an attorney's services is contingent on the securing of a divorce, or if the amount to be paid for his services is proportioned to the amount of alimony to be received, the attorney is in such a position that his interest would be against a reconciliation of the parties." Annotation, 30 A. L. R. 188. A contract for the payment of a fee to an attorney contingent upon his procuring a divorce for his client or contingent in amount upon the amount of alimony and property awarded to the wife is void as against public policy. This rule has been expressly recognized by this court since 1917 and all officers of the court are charged with notice of its existence. Klampe v. Klampe, 137 Minn. 227, 163 N. W. 295. We pointed out in that case that the law does not favor divorce and that any agreement for divorce, or any collateral bargaining promotive of it, is unlawful and void.[14]

---

[13]Warner v. Warner, 219 Minn. 59, 17 N. W. (2d) 58; Kasal v. Kasal, 227 Minn. 529, 35 N. W. (2d) 745; 6 Dunnell, Dig. (3 ed.) § 2786.

[14]See, In re Smith, 42 Wash. (2d) 188, 254 P. (2d) 464; McCarthy v. Santangelo, 137 Conn. 410, 78 A. (2d) 240; Roten v. Tesdell & Mackaman, 195 Iowa 1329, 192 N. W. 442, 30 A. L. R. 180; Jordan v. Westerman, 62 Mich. 170, 28 N. W. 826; Annotation, 30 A. L. R. 188.

### DISCOVERY PROCEDURES APPLICABLE IN DIVORCE ACTION

■ There is no merit in the contention that discovery under the new rules of civil procedure is not available in divorce actions. Chapter 518 on divorce is one of the special statutory proceedings listed in Appendix A and excepted by Rule 81.01 from the operation of the rules *insofar as the statutes are inconsistent or in conflict with the procedure and practice provided by such rules.* That the rules are applicable to such statutory provisions insofar as they are not inconsistent or in conflict is expressly declared by Rule 81.03 which provides that, where any statute, heretofore or hereafter enacted, whether or not listed in Appendix A, provides that any act in a civil proceeding shall be done in the manner provided by law, such act shall be done in accordance with these rules. No provision of c. 518 is inconsistent or in conflict with the discovery provisions of the rules of civil procedure. It follows that discovery is as fully available in a divorce action as in any other action.[15]

### PROTECTION OF PARTIES AND WITNESSES IN DISCOVERY PROCEDURES

■ Defendant moved the trial court for an order requiring plaintiff, as a director and officer of certain corporations in which he was interested as a minority stockholder,[16]—

"* * * to give to the accountants selected by defendant, full access to the safe deposit box and safes and to all books, records and accounts of said corporations, as in the determination of said accountants will materially assist in establishing the financial position, *net worth, earnings and respective earnings and income of plaintiff herein,* * * *." (Italics supplied.)

The motion was denied. In response to a subpoena duces tecum commanding the corporations to produce their books and records, plaintiff's attorney moved that the subpoenas be quashed. This

[15]See, 36 Minn. L. Rev. 695, 707, 708; Wright, Minnesota Rules, pp. 388, 389.

[16]In any event, plaintiff did not own more than 50 percent of the stock in any corporation.

motion was granted. Upon discovery examination of the plaintiff, the court denied inquiry into matters relating to the internal corporate affairs. During the trial cross-examination of the plaintiff for the same purpose was denied.

The evidence indicates that the corporations might be exposed to injury from large competitors if their internal affairs and trade practices were revealed. It also appears that one of defendant's counsel was interested in, and was an officer of, at least one of these competing companies when the trial herein commenced.

Under the circumstances did the court abuse its discretion in denying an inquiry into the internal affairs of these corporations? Rule 30.02, with respect to depositions, provides that the court shall exercise its power with liberality in issuing orders which justice requires for the protection of parties or witnesses from unreasonable annoyance, expense, embarrassment, or oppression. Expressly made subject to Rule 30.02 is Rule 34 which provides that, upon a showing of good cause, the court may order any party to produce and permit the inspection and copying or photographing by the moving party of designated documents, papers, books, accounts, etc., which are not privileged and which contain evidence within the scope of examination permitted by Rule 26.02. When a subpoena commands a person to produce books, papers, documents, or tangible things designated therein, Rule 45.02 provides that the court, upon motion, may (1) quash or modify the subpoena if it is unreasonable or oppressive, or (2) condition the denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things.[17] The tenor of the new rules is to permit a wide discovery and investigation of the facts under Rules 26.02 and 34 but not to permit such discovery and investigation to be used in bad faith or in such a *manner* as unreasonably to annoy, embarrass, oppress, or injure the parties or witnesses (Rules 30.02, 30.04, 45.02).

[17]A clear distinction is to be drawn between discovery under Rule 34 and the issuance of a subpoena duces tecum under Rule 45. See, 2 Barron & Holtzoff, Federal Practice and Procedure (Rules ed.) § 1002.

It is significant that defendant's proposed investigation and audit of these corporations was to be conducted at estimated cost of from $8,000 to $15,000 to be paid by the plaintiff.

Obviously the trial court has a wide discretion as to the means to be employed in protecting the parties and witnesses. What protective orders or procedures are adopted will vary according to the type of action, the issues involved, and all the related and surrounding circumstances. Here the court may have concluded that the third-party corporations would be seriously damaged if their financial and trade secrets were exposed. Furthermore, it was not desirable to saddle the husband unnecessarily with an oppressive $8,000 to $15,000 auditing charge. It was a divorce case. Under the circumstances it was proper, as a protective measure, to defer a final ruling until the merits of the action had been sufficiently litigated so as to make a reasonable showing of whether either party would be entitled to a divorce and to indicate to what extent the delinquency of the wife, if any, might affect the award of alimony.

## COURT CONTROLS ORDER OF PROOF

■ That the issue of alimony may thus be deferred is contemplated by § 518.55 which provides:

"* * * In any judgment of divorce the court may determine, as one of the issues of the case, whether or not the wife is entitled to an award of alimony *notwithstanding that no award is then made, or it may reserve jurisdiction of the issue of alimony for determination at a later date.*" (Italics supplied.)

Aside from this statutory provision, the court has inherent power in conducting a trial to control, in the interest of justice, the order of the presentation of issues and the order of proof.[18]

## AWARD OF ALIMONY AND PROPERTY DISCRETIONARY

■ It is not to be overlooked that an award of alimony is granted not as a matter of right, and the award, and the amount

[18]See, 6 Dunnell, Dig. & Supp. §§ 9706, 9715; Mason's Dunnell, Minn. Practice, § 1441.

thereof, rests in the sound discretion of the trial court.[19] Section 518.60 states that upon a divorce for any cause the court *may* award such alimony as it deems just and reasonable according to the circumstances set forth in § 518.59. Section 518.59 provides that the court may award real and personal property to the wife according to *the character and situation of the parties, the nature and determination of the issues, and all other circumstances of the case.*

DELINQUENCY OF PARTIES CONSIDERED IN FIXING ALIMONY

■ Since Buerfening v. Buerfening, 23 Minn. 563, this court has recognized that the delinquency of the parties is a material element in fixing the amount of alimony and the division of property. This principle has been recognized in a succession of cases.[20] In Swanson v. Swanson, 233 Minn. 354, 359, 46 N. W. (2d) 878, 882, we said:

"* * * so far as we can determine no court in this state has held that the conduct of the wife should not be considered as a factor bearing on the amount of the award to which she may be entitled upon a divorce. Sacred as the marriage relationship should be, plaintiff appears not to have cherished her marriage except for the material benefit it gave her. We fail to see that a marriage of this kind will be made more sacred by judicial action directed solely at preserving its most mundane benefits for the wife. We do not wish to imply that in a divorce action marital rights are to be purchased or sold for what they are worth in material and spiritual terms. We hold merely that a wife will not be heard to say that her husband should be held to a full performance of his marital duties where she has neglected to perform hers. This holding is not based upon a strict contract theory, but rather upon the theory that the marriage relationship embodies mutual obligations, which will be more highly regarded if they are mutually enforceable. * * * It does not seem

[19]Webber v. Webber, 157 Minn. 422, 196 N. W. 646; Louden v. Louden, 221 Minn. 338, 22 N. W. (2d) 164.

[20]Webber v. Webber, 157 Minn. 422, 196 N. W. 646; Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164; Swanson v. Swanson, 233 Minn. 354, 46 N. W. (2d) 878; see, Annotations, 9 A. L. R. (2d) 1026, 34 A. L. R. (2d) 313, 330 to 335, and 82 A. L. R. 539.

likely that marital harmony will be promoted if a wife may drive her husband from her without prejudice to her claim for alimony and property."

### LITIGATION OF RIGHT TO DIVORCE AND ALIMONY PRIOR TO DETERMINATION OF HUSBAND'S NET WORTH

■ It is therefore clear in a divorce action, where discovery procedures directed toward the establishment of the husband's net worth involve burdensome expense and an exposure of the parties and witnesses to unreasonable oppression and injury within the meaning of Rules 30.02 and 45.02, the trial court may, in its discretion, require both parties first to litigate the issue of whether either party is entitled to a divorce, and the further issue of whether any delinquency of the parties has been of a nature and degree which is material in fixing the amount of alimony, if any be awarded. Until grounds for a divorce have been reasonably established, there is no need for incurring burdensome expense or for exposing parties or witnesses to annoying or oppressive disclosures.

### ADMISSION OF RELEVANT NONPRIVILEGED EVIDENCE WITH PROTECTIVE SAFEGUARDS

■ The question still remains whether the amount of alimony may finally be fixed without the court first knowing the total value of the husband's estate. Before passing on this question we turn to another evidentiary item which was excluded by the court, namely, the 1953 annual financial statement of the Western Oil and Fuel Company which showed a total corporate surplus on hand of $1,766,227. It was error to exclude this financial statement. It should have been admitted for whatever it was worth. It pertained to one of the corporations in which plaintiff was a stockholder. The court could admit it subject to reasonable limitations upon the right of cross-examination thereon. Other similar annual statements, with the aid of expert opinion, would have had evidentiary weight in determining the value of plaintiff's corporate stock. Only in a most exceptional case may the total value of the husband's property, both real and personal, be ignored. Whenever possible the court should

exercise its discretionary protective power in a manner which will admit evidence relevant to issues when such issues cannot otherwise be fairly adjudicated. It is difficult to understand how this annual financial statement would have revealed information of value to competitors.

Although courts must be alert to safeguard the purpose of evidentiary privileges (Rule 26.02) and to protect the parties and witnesses from unreasonable annoyance, expense, embarrassment, or oppression (Rules 30.02, 45.02), they must be equally alert to see that these privileges and protective safeguards are not enforced in such a blind and sweeping manner that they unnecessarily become vehicles for the suppression of relevant and essential evidence.[21] Where nonprivileged evidence is relevant and essential to a fair adjudication of issues, the protective powers of the court should be exercised not to exclude the evidence absolutely but to admit it with protective safeguards. There usually is no absolute protection against disclosure of trade secrets and practices on the ground that their revelation might result in giving information to a competitor when, if the evidence is not admitted, the issues cannot be fairly tried.[22]

### EXCEPTIONALLY GRAVE MISCONDUCT OF WIFE MAY JUSTIFY AWARD OF ALIMONY WITHOUT DETERMINING TOTAL VALUE OF HUSBAND'S PROPERTY

■ Was the erroneous exclusion of the 1953 annual corporate statement prejudicial? The answer depends on whether the court,

---

[21]In Snyker v. Snyker, 245 Minn. 405, 72 N. W. (2d) 357, the trial court issued an order which protected privileged matter without excluding relevant evidence.

[22]International Nickel Co. Inc. v. Ford Motor Co. 19 Fed. Rules Serv. 30b.352, Case 1, 15 F. R. D. 392; Louis Weinberg Associates, Inc. v. Monte Christi Corp. 19 Fed. Rules Serv. 30b.352, Case 2, 15 F. R. D. 493; Melori Shoe Corp. v. Pierce & Stevens, Inc. 18 Fed. Rules Serv. 33.335, Case 1, 14 F. R. D. 346. The court may, however, impose special protective conditions. Cooney v. Guild Co. 3 Fed. Rules Serv. 26b.46, Case 1; Melori Shoe Corp. v. Pierce & Stevens, Inc. *supra;* Fox v. House (in re third party), 2 Fed. Rules Serv. 45b.43, Case 1, 29 F. Supp. 673; 4 Moore, Federal Practice (2 ed.) pars. 26.22[3] and 30.12; 5 Id. par. 45.05[1], p. 1721, footnote 24.

in the light of the evidence before it and in the light of defendant's conduct, could fix the amount of alimony without knowing the total value of plaintiff's real and personal property. The court had before it plaintiff's Federal and state income tax figures for the years 1944 to and including 1953, his bank deposit books, all original stock certificates, his life insurance policies and annuity contracts, and all real estate papers. There was evidence indicating that after the payment of Federal and state income taxes the plaintiff had an income of $39,826.24 for 1951, $36,332.60 for 1952, and $43,571.49 for 1953, and that his declared net worth—*without ascribing any value to his corporate stock*—was $222,957.78. In maintaining the home he had spent annually $8,583 for insurance coverage, $2,419 for food, $306 for fuel, $2,403 for a housekeeper, $3,747 for medical expenses, of which $2,800 was for the defendant, about $2,700 for charity, $628 for taxes, $1,281 for summer camp for the children, and various other items which in aggregate total about $30,675. The principal value of these figures is to indicate the available income and the standard of living to which the parties were accustomed.

As heretofore indicated, plaintiff was awarded the divorce and the custody of the two children. Without knowing the full value of plaintiff's property, the court awarded defendant alimony of $500 a month in addition to the $136.25 monthly income which she derived from the $40,000 which she had acquired from the plaintiff prior to the divorce. As already shown, the conduct of the wife is a factor bearing on the amount of the alimony which may be awarded to her in the event of a divorce.[23] In the trial court's memorandum, which was made a part of the order denying an amendment of the findings of fact and conclusions of law, the trial court said:

"* * * Defendant during her married life showed no interest in her children and left their care to the plaintiff and a housekeeper. While she requested custody, her calculations for support money and alimony were based on the plaintiff having the children.

[23]See, particularly, Swanson v. Swanson, 233 Minn. 354, 359, 360, 46 N. W. (2d) 878, 882.

"Defendant brought little into the marriage except an uncontrollable temper, a desire for security and an abnormal interest in sex. Prior to her marriage to plaintiff she had been a primary school teacher in the State of Missouri, earning $1,000.00 a year. She now has more than $40,000 in cash and liquid securities and an income in excess of $600 per month to live upon."

The trial court's finding of extreme misconduct on defendant's part is sustained by the evidence. Since her misconduct, and we shall not review the details, constituted in effect an extreme case of systematic and calculated cruelty, and involved indifference and misconduct inimical to the welfare of the children and to the maintenance of a wholesome family atmosphere, we cannot say that the trial court abused its discretion in fixing the amount of alimony and in limiting the division of property to what she had already received without first knowing the total value of plaintiff's property. Since the delinquency of the parties is a factor to be considered in fixing the amount of alimony and the division of the property, its significance as a factor increases with the degree of delinquency, with the result that in an exceptional case the marital misconduct may be so grave that the wife is not entitled to an amount of alimony and property in any proportion to the husband's estate, and the award thereof may then be made without establishing the total value of the husband's property. This rule is applicable only in very exceptional cases. We here have that exceptional case and we find no abuse of discretion. We reiterate what we said in Swanson v. Swanson, 233 Minn. 354, 360, 46 N. W. (2d) 878, 882, that marital harmony will not be promoted if a wife may drive her husband from her without prejudice to her claim for alimony and property. The income here assured to the defendant will reasonably maintain her according to the standard to which she has become accustomed. She has exhibited no genuine interest in the children and has only to care for herself. As we have pointed out repeatedly,[24] the power of

[24]Burke v. Burke, 208 Minn. 1, 5, 292 N. W. 426, 428; Hartigan v. Hartigan, 145 Minn. 27, 29, 176 N. W. 180, 181; Louden v. Louden, 221 Minn. 338, 22 N. W. (2d) 164; Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164; 6 Dunnell, Dig. (3 ed.) § 2805.

the court to revise a decree for alimony is very broad and gives the defendant ample protection if her future needs, in the light of all the circumstances of the case, justify a revision.

In view of our holding, the erroneous exclusion of the annual corporate financial statement was without prejudice and it becomes unnecessary to discuss whether discovery ought ultimately to have been allowed to establish the value of plaintiff's corporate stock. The trial court further found that the $2,750 which defendant's attorneys had already collected for their services (together with the sums of $986.30 and $43.70 for necessary disbursements incurred) adequately compensated them in view of the quality of work and their manner of handling the case. Under the circumstances we sustain such allowance of attorneys' fees and disbursements as adequate. In approving such limited attorneys' fees, we are mindful of the illegal contingent fee contract which provided an unwholesome incentive and that such incentive may have contributed to the undue protraction of the trial.

### Contingent Fee Contract Bars Recovery in Quantum Meruit

■ Although we have approved of the attorneys' fees already allowed by the trial court, we are allowing defendant no attorneys' fees on this appeal. Since contingent fee contracts in divorce actions are contrary to public policy they must be eradicated from our practice. We therefore expressly overrule the two Klampe v. Klampe cases, 137 Minn. 227, 163 N. W. 295, and 145 Minn. 404, 177 N. W. 629, insofar as they permit an attorney who is a party to a contingent fee contract in a divorce action to recover what his services are reasonably worth. Since the illegality of the contingent fee contract rests on the ground that it may govern a lawyer's action in a manner which thwarts public policy, the taint of illegality permeates the entire lawyer-client relationship in a divorce action so that every objection to permitting a recovery on the express agreement applies with equal force to an attempted recovery in quantum meruit. McCarthy v. Santangelo, 137 Conn. 410, 78 A. (2d) 240. We allow the defendant, however, one-half of her necessary costs and disbursements upon this appeal.

514

We find no basis for a new trial. The judgment and order of the trial court are affirmed.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

[1]Reported in 75 N. W. (2d) 780.