**In re the Marriage of Therese CIRIACY, Petitioner, Appellant,**

v.

**Edward W. CIRIACY, Respondent.**

**No. C8-88-1074.**

Court of Appeals of Minnesota.

Nov. 29, 1988.

William E. Haugh, Jr., John R. Schulz, Dan O'Connell, Collins, Buckley, Sauntry & Haugh, St. Paul, Paul A. Sortland, Sortland Law Office, Fargo, N.D., for petitioner, appellant.

Patrick T. Ellis, Ellis & Roos, Minneapolis, for respondent.

Todd Haggart, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, N.D., for respondents Dakota Clinic and Medical Properties.

Heard, considered and decided by NORTON, P.J., and FLEMING and LESLIE, JJ.*

## OPINION

FLEMING, Judge.

Subpoenas duces tecum were served on Dakota Clinic, Ltd. and Medical Properties,

Inc. (Dakota Clinic), Edward Ciriacy's employer. The Clay County District Court ordered the subpoenas partially quashed. Therese Ciriacy moved to vacate the order partially quashing the subpoenas. The motion was denied, and Therese filed an appeal and an alternative petition for discretionary review. This court accepted jurisdiction over the appeal and denied the petition for discretionary review as unnecessary. We reverse.

## FACTS

The underlying marriage dissolution was filed in Washington County in November 1986. At some point after the proceedings had begun, Edward moved to Park Rapids and established a medical practice, obtaining an ownership interest in the Menagha and Riverside Clinics.

Dakota Clinic owns and operates clinics in northwestern Minnesota and North Dakota. Dakota Clinic's main competitor, Fargo Clinic, does not have clinics in the areas served by the Menagha and Riverside Clinics.

Following negotiations with Fargo Clinic and Dakota Clinic, Edward sold his clinics to Dakota Clinic and became a shareholder employee of Dakota Clinic. Therese moved for an order granting her the right to obtain and inspect documents from Dakota Clinic and depose its employees to evaluate Dr. Ciriacy's interest in Dakota Clinic. This motion was granted by the Washington County District Court. Dakota Clinic was not involved in this motion.

The information sought was:

\* \* \* \* \* \*

5. Salary, benefit information (including stock buy back conditions) and experience and education for other doctors in Dr. Ciriacy's specialty currently in [the clinic's] employ

6. Financial/Growth Forecasts for the Years 1985 through 1991 Inclusive (Bonds, Notes, Contracts and Mortgages Payable and Receivable)

\* \* \* \* \* \*

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

12. By–Laws, Articles of Incorporation and stock certificates

\* \* \* \* \* \*

14. Financial statements (cash and/or accrual basis) and auditor's opinions as of and for periods ending during the years 1984, 1985, 1986, 1987 and the interim periods (on a monthly basis or for the entire period) from the end of the last fiscal year to date.

15. Documents reflecting the terms of repurchase of shares and benefits to doctors who have terminated ownership interest and/or employment during the preceding 36 months.

16. Call schedule

The depositions were scheduled to be held in Clay County. Following receipt of the subpoenas duces tecum, Dakota Clinic moved to modify or partially quash the subpoenas on the grounds that they were oppressive and unreasonable, and required the production of financial data that were confidential and unnecessary in light of the employment agreement between Dr. Ciriacy and Dakota Clinic.

The Clay County District Court issued an *ex parte* order modifying the subpoenas. The court concluded the requested information was not necessary for a fair valuation of Edward Ciriacy's interest in Dakota Clinic. Dakota Clinic, through its assistant administrator, Arnold Carrier, provided an affidavit stating what Edward Ciriacy's interest in Dakota Clinic was; the trial court reasoned this was sufficient and production of sensitive business data would be unduly oppressive in light of this disclosure. Therese moved to vacate the order. The trial court denied her motion, and she has appealed.

### ISSUES

1. Did the Clay County District Court have authority to modify subpoenas issued by the Washington County District Court?

2. Did the Clay County District Court abuse its discretion in modifying the subpoenas?

3. Is this appeal moot?

### ANALYSIS

1. A person to whom a subpoena is directed may move to quash or modify the subpoena if it is unreasonable or oppressive. Minn.R.Civ.P. 45.02(1). When the subpoena directs a person to appear at a deposition, the motion to quash or modify may be brought in the district in which the deposition is to be held. Minn.R.Civ.P. 26.-03.

When, as in the present case, the subpoena directs a person to produce and permit inspection and copying of documents, Minn.R.Civ.P. 45.04 applies. That rule provides:

(2) The person to whom the subpoena is directed may, within 10 days after service thereof or on or before the time specified in the subpoena for compliance if such time is less than 10 days after service, serve upon the attorney designated in the subpoena written objection to the production, inspection or copying of any or all of the designated materials. *If objection is made, the party serving the subpoena shall not be entitled to the production of, nor the right to inspect and copy the materials except pursuant to an order of the court from which the subpoena issued.* The party serving the subpoena may, if objection has been made, move upon notice to the deponent for an order at any time before or during the taking of the deposition.

Minn.R.Civ.P. 45.04(2) (emphasis added). No order was obtained from the Washington County District court, which issued the subpoenas.

The action taken is authorized by Minn. R.Civ.P. 26.03, which provides:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or *alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken* may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

\* \* \* \* \* \*

(7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;

\* \* \* \* \* \*

(Emphasis added.)

Subdivision 7 authorizes the Clay County District Court to order that the commercial information of Dakota Clinic not be released if justice so requires. *See* Minn.R. Civ.P. 26.03, Advisory Committee Note (1975). Such a protective order is applicable to all forms of discovery. *Id.*

We conclude the Clay County District Court had authority to modify the subpoenas issued by the Washington County District Court.

2. A trial court has broad discretion in granting or denying discovery requests. *Baskerville v. Baskerville*, 246 Minn. 496, 507, 75 N.W.2d 762, 769 (1956); *Connolly v. Commissioner of Public Safety*, 373 N.W.2d 352, 354 (Minn.Ct.App.1985). This court will not reverse a trial court's discovery decision in the absence of an abuse of discretion. *Id.* "In ruling on a motion to quash [a subpoena], the court should balance the need of the party to inspect the documents or things against the harm, burden, or expense imposed upon the person subpoenaed." 2 D. Herr & R. Haydock, *Minnesota Practice* § 45.7, at 374 (1985). However,

[l]ocal courts whose only connection with a case is the supervision of the taking of depositions ancillary to an action elsewhere should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder.

*Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir.1961).

The need of Therese to inspect the documents is that, absent access to the financial data in Dakota Clinic's documents, she will be unable to show what Edward's interest in Dakota Clinic is. Dakota Clinic has stated the value of Edward's interest in the Clinic is $1,825. Therese cannot dispute that figure without the requested information.

Dakota Clinic's interests in quashing the subpoenas are nondisclosure of sensitive financial information and preservation of the privacy interests of Dakota Clinic's physicians. Dakota Clinic contends the salaries of its approximately 160 physicians should not be disclosed.

Dakota Clinic overstates the harm it will suffer if the subpoenas are not quashed. First, Therese did not seek disclosure of all 160 physicians at Dakota Clinic; she sought only the salaries, education and experience of those practicing in Edward's specialty. Therese offered to allow Dakota Clinic to delete the names of the doctors involved and substitute numbers. In addition, the order allowing the subpoenas provided:

Petitioner, her attorneys and accountants are restrained from utilizing and disseminating any of the documents and information obtained from Respondent or Dakota Clinic and Medical Properties, Inc. pursuant to this paragraph 2 except for the purpose of evaluating Respondent's interest in Dakota Clinic and Medical Properties, Inc.

The Clay County court, in quashing the subpoenas, decided that the information sought was not necessary to determine Edward's interest in Dakota Clinic. This decision was based on the affidavit of Arnold Carriere, an assistant administrator of Dakota Clinic, who stated that Edward's employment agreement outlines what Dakota Clinic owes Edward. A copy of the employment agreement was produced at Arnold Carriere's deposition; the agreement states that upon termination of the agreement the doctor agrees to sell his stock in the clinic to the clinic according to the terms of the Clinic's by-laws. The by-laws, in turn, contain a formula, based on the financial statements of the clinic, for determining the value of the stock of a doctor who terminates the employment agreement, regardless of the reason. The court's determination that the financial statements of Dakota Clinic are not needed to determine the value of Edward's interest in the clinic is clearly wrong.

The remainder of the documents sought are needed, according to appellant, to determine whether the sale of the Riverside and Menagha Clinics to Dakota Clinic is reflected indirectly in a more favorable call schedule, increased compensation or some other form of compensation not reflected in the documents of sale. Arnold Carriere says there is no such indirect compensation. The trial court was satisfied with Carriere's statement.

■ The trial court abused its discretion in denying Therese access to the requested records. Dakota Clinic's contention that it is a disinterested party is undercut by the fact it is Edward's employer. The clinics he sold to Dakota Clinic give it a competitive edge over Fargo Clinic in the areas served. By focusing on the hardship imposed on Dakota Clinic by revelation of the requested data without considering the protective order in place and the further protection agreed to by Therese, and by failing to give adequate consideration to the need of Therese to confirm or deny the representations of Arnold Carriere, the court unduly restricted discovery.

Therese will be allowed to examine the documents requested. This examination will be subject to the protective order in the subpoenas as originally issued, and further subject to Therese's prior offer to allow Dakota Clinic to substitute numbers for the names of physicians in Edward's specialty.

3. Edward resigned as a shareholder of Dakota Clinic effective July 1, 1988. Dakota Clinic has moved to dismiss this appeal, contending it is moot because Edward is no longer a stockholder in Dakota Clinic. By Special Term order, this court deferred the motion to dismiss until consideration of the appeal on the merits.

■ Therese contends the appeal is not moot because the resignation may be a sham designed to conceal marital assets. A party to a dissolution cannot be allowed to conceal marital assets in order to reduce the property available for division. *Bollenbach v. Bollenbach,* 285 Minn. 418, 428, 175 N.W.2d 148, 155 (1970). A property division is not subject to later modification in the absence of mistake or fraud. *Kerr v.*

*Kerr,* 309 Minn. 124, 126, 243 N.W.2d 313, 314 (1976).

Dakota Clinic contends it has disclosed, through Carriere's affidavits, all debts and obligations owed Edward by Dakota Clinic. It would be preferable to allow Therese to confirm or refute this.

Therese also contends a comparison of compensation paid other physicians in Edward's specialty remains relevant. If, as Therese suspects, Edward's compensation is higher than other physicians in the same specialty with similar qualifications and experience, her expert will attempt to show Edward is being paid a premium on top of his regular compensation in consideration of his existing medical practice.

Finally, Therese contends Edward's decision to be an employee rather than a shareholder may constitute a wasting of marital assets if his current compensation package is worth less than the shareholder compensation package. It is not possible, she contends, to determine the values to be placed on each package without an opportunity to examine Dakota Clinic's books.

Dakota Clinic contends there is no need to examine the books to determine what each compensation package is worth. Edward's current compensation as an employee of Dakota Clinic is 50% of gross professional bookings. Dakota Clinic has provided Therese's counsel with Edward's gross professional bookings for the period from January 1, 1987 through June 30, 1988. Edward's compensation has been based on gross professional bookings since July 1, 1988.

Assuming the figures provided by Dakota Clinic accurately reflect Edward's gross professional bookings, it is not possible to compare his current compensation with his prior compensation without access to Dakota Clinic's books. In addition, it would be preferable to allow Therese to confirm or deny the gross professional bookings stated by Dakota Clinic.

■ Because it is necessary to determine what Edward's interest in Dakota Clinic was worth and whether he has retained

any interest in the clinic, this appeal is not moot.

## DECISION

The Clay County District Court had authority to modify the subpoenas issued by the Washington County District Court. In unduly restricting discovery, the Clay County District Court abused its discretion. This appeal is not moot.

REVERSED.